*588 P.2d 355*

**The STATE of Arizona, Appellee,**

**v.**

**Robert Cardenas MARTINEZ, Appellant.**

**No. 2 CA–CR 1351.**

Court of Appeals of Arizona,
Division 2.

Sept. 19, 1978.

Rehearing Denied Oct. 25, 1978.

Review Denied Nov. 14, 1978.

John A. LaSota, Jr., Atty. Gen., by William J. Schafer, III, and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Donald S. Klein, Tucson, for appellant.

## OPINION

HOWARD, Judge.

Appellant Robert Martinez was convicted by a jury of armed robbery and was sentenced to a prison term of not less than 30 nor more than 60 years.

His first claim on appeal is that the trial court erred in allowing the prosecution to impeach two of his witnesses. At the time of the trial, the new Arizona Rules of Evidence were not yet in effect.

The testimony of Mr. Martinez' mother and of his girlfriend, Rosa Teran, was central to his defense. Mrs. Martinez testified that Robert was wearing Levis and a blue sweatshirt on the day of the robbery, while the victim had said the robber was wearing light brown pants and a light-colored print shirt. Rosa Teran testified that Robert was with her at the time the robbery was established as having occurred. Other witnesses corroborated this, but were less sure of the date or hour than was Ms. Teran.

Over defense counsel's objections, the prosecutor asked both Mrs. Martinez and Rosa Teran if they had visited the robbery victim sometime between the robbery and the trial. Both said they had. They both denied however, that either of them had offered the victim money if she would drop the charges, or had told her that Ms. Teran was married to Robert Martinez and was pregnant. The robbery victim, Barbara Escalante, was then brought back to testify. She said that Mrs. Martinez and Rosa Teran had offered just to repay the $10 which had been stolen and when she refused, they offered her $100 if the robbery charge was dismissed. She also said that Rosa told her that Martinez was her husband and that she was pregnant.

Appellant contends that since there was no evidence that he had authorized these offers, they were inadmissible.

To support this proposition appellant relies on *Strickland v. State*, 40 Ala. App. 413, 115 So.2d 273 (1959); *State v. Goode*, 185 N.C. 737, 117 S.E. 337 (1923); *Yoder v. State*, 66 Okl.Cr. 178, 90 P.2d 669 (1939); and *Ware v. State*, 204 Miss. 107, 37 So.2d 18 (1948). Care must be taken to distinguish situations in which the evidence is offered to impeach the witness from those in which the evidence is offered as an admission by the defendant. The rule enunciated in 4 Wigmore on Evidence (Chadbourn rev. 1970) Sec. 1061, p. 46 is:

"In a criminal prosecution, the accused's offer to pay money or otherwise to 'settle' the prosecution will be received against him, because that mode of stopping or obstructing the prosecution would be an unlawful act, and good policy could not encourage that mode of dealing with a criminal charge. . . ."[1]

1. See also C. McCormick, Handbook of The Law of Evidence 542 (1954).

It is therefore admissible as an extrajudicial admission. The cases from Alabama and Mississippi ˙ are distinguished since these states do not follow the Wigmore rule. See *Brunson v. State*, 26 Ala.App. 255, 157 So. 678 (1934); *Jones v. State*, 180 Miss. 210, 177 So. 35 (1937). A reading of *State v. Goode*, supra, reveals that the testimony of an offer made by the defendant's father to pay the victim was not offered to impeach the testimony of the father. Under such circumstances the court held it was error to allow the testimony because there was no evidence that the offer was made by the defendant or with his consent. The same is true in *State v. Yoder*, supra. Here we are concerned with the witness as such and the question is what sort of conduct on the witness' part admits of inferences against the witness of a willingness to falsify. There is no doubt that a witness' attempt to bribe another witness to speak falsely or to abscond indicates a corrupt intention on the first witness' part and thus affects his trustworthiness. 3A Wigmore on Evidence (Chadbourn rev. 1970) Sec. 960, p. 805. Just as it is unlawful for a defendant to offer money to stop a prosecution so too is it unlawful for a witness to make such offer to another witness. When a witness makes such an offer the witness may be impeached by showing the offer. *People v. Calderon*, 155 Cal.App.2d 526, 318 P.2d 498 (1957); *Coleman v. State*, 90 Tex.Cr.R. 297, 235 S.W. 898 (1921); *Nader v. State*, 86 Tex. Cr.R. 424, 219 S.W. 474 (1920). Appellant was entitled to a limiting instruction on the use of this evidence. *Coleman v. State*, supra. The trial judge asked appellant to provide such instruction but he failed to do so.

Appellant's second contention is that the photographic lineup by which Mrs. Escalante identified him was so suggestive as to give rise to a substantial likelihood of misidentification.

Mrs. Escalante had described the robber to the police as a Mexican man with light brown hair, blue or green eyes, and a light complexion. She also had estimated his height, weight and age. With this information the police compiled one photographic lineup of young men with light brown or dark blonde hair, including a Mexican-American suspect who was not the appellant. Mrs. Escalante said none of them were the robber. A few days later, because of additional information, the police compiled a photographic lineup which included a photograph of appellant. These photographs were all of men appearing to be of Mexican descent. All have brown hair and all but the appellant have brown eyes. Appellant's eyes in the photograph are not strikingly different and one must look very closely to notice that they appear to be grey or a dark hazel.

The Supreme Court has recently held "that reliability is the linchpin in determining the admissibility of identification testimony . . . . The factors to be considered are set out in *Biggers*." *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, at 2253, 53 L.Ed.2d 140 (1977). In *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Court listed as the factors which indicate reliability:

". . . the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." 409 U.S. at 199, 93 S.Ct. at 382.

Mrs. Escalante testified that the robber was three to four feet from her during the incident, that the area was well lit, and she looked at his face during the robbery. The description she gave the police was firm and complete. Though her words "light brown hair" and "light complexion" may have initially confused the police officers, Mrs. Escalante seems to have been clear in her own mind as to what she meant. She made a positive identification of the appellant's photograph three or four days after the robbery.

The men in the photographic lineup basically resemble each other. Despite the difference in eye color, appellant's picture

does not stand out so as to make the lineup so suggestive that it was equivalent to a one-man show-up, as appellant contends. Even if the lineup was suggestive, the factors surrounding Mrs. Escalante's identification assure its reliability and the independent reliability of her in-court identification.

 Appellant's final contention is that the trial judge violated Rule 26.6(c), Arizona Rules of Criminal Procedure, and appellant's right to due process by conferring with the probation officer prior to sentencing and not notifying appellant or his attorney of the conference, allowing them to be present, or informing them afterwards of what occurred.

Rule 26.6 requires disclosure to the defendant of all pre-sentence reports. Subsection (c) lists the kinds of information which can be excised from the reports, but requires the court to inform the parties that there has been an excision. Appellant's position is that the conference was in essence part of the presentence report.

Understandably, appellant does not say what transpired at the conference. At the hearing on appellant's motion for post-conviction relief however, Judge Birdsall said "I can't pretend to remember at this point what we discussed, but I can assure you that if there was any new factual information that came to the Court, I would have told counsel about it." The current version of Rule 26.6 is based on the holding in *State v. Pierce*, 108 Ariz. 174, 494 P.2d 696 (1972). In a footnote in *Pierce* the court specified that the recommendations of the probation officer need not be disclosed. Since the sentencing judge assured that the probation officer gave him no new factual information, none of the possible conjectures of what was discussed at the conference falls within the disclosure requirements of Rule 26.6. There is no due process requirement that every conversation between the probation officer and the sentencing judge be open to the defendant.

 Appellant suggests that his harsh sentence indicates something significant happened at this meeting. However, the length of the sentence is within the statutory limits and is supported by the presentence report which shows that appellant has a propensity for violence. While it may seem illogical to give appellant the burden of showing that something improper happened at this conference when the basis of his argument is that he does not know what happened, there is nothing to even raise a suspicion that the sentencing judge improperly failed to disclose information.

The judgment and sentence are affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.