DANAHY, Judge.
Keith Britton was charged by information with armed robbery. He filed a motion to suppress in-court identification by witness Ruth Collinett, which the trial court granted. The state appeals.[1]
At the suppression hearing, Mrs. Collinett testified that she noticed a car in the Best Bar’s parking lot at about 11:15 p. m. She noticed the car because she thought the occupant was a friend of hers. He appeared to be taking clothes off or putting them on. Mrs. Collinett returned to the bar and asked the barmaid to check out the car. The barmaid went out to the parking lot, returned, and told Mrs. Collinett that it was their friend. They then waited for the friend to come into the bar. When no one entered the bar, they went back outside and determined it was not the friend’s car. A few minutes later, Mrs. Collinett went outside and again noticed the car. Unconvinced that it was not her friend, she went over to speak to the occupant of the car. When she touched him and asked him why he wasn’t coming in, the man-who she now discovered was not her friend-stated that she had frightened him. When she inquired why he was wet, he explained that he had walked across some fill dirt. She stood face to face with the man, and they spoke for five to ten seconds.
Mrs. Collinett testified that she spoke with Sergeant Bland on the day after the incident and was shown two photographs, both of the appellee. Sergeant Bland inquired whether either looked like the man she saw on the night in question. She told Sergeant Bland that one looked like the man, but she really wasn’t sure and would rather have a better picture. Subsequently, Mrs. Collinett inspected a “photo-pak” containing five photographs (which did not include either of the photographs she was shown previously) and she positively identified the photograph of the appellee. She testified that she recalled his looks from their conversation in the parking lot, not from the prior photographs. She described the man that she spoke with as having “long hair, a small moustache, and a stubby, unshaven face.”
After indicating that she was nearsighted, she stood up, walked to the defense table, and identified appellee as the man she had confronted in the parking lot.
Sergeant Bland testified that he interviewed Ruth Collinett at the Best Bar within a few days of the robbery. He testified that he showed her two photographs, both of appellee. She told him that the mouth looked similar and it could be the man. Later in the day, he presented the “photo-pak” containing five photographs to Mrs. Collinett. She selected the photograph of appellee and stated that she did not remember the beard, but that the eyes and the features were the same. She showed no hesitation or difficulty in making the identification.
The court found the identification procedures suggestive and granted appellee’s motion to suppress. We reverse.
In Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court stated that in determining whether it is necessary to suppress an in-court identification “the primary evil to be avoided is ‘a very substantial likelihood of irreparable misidentification.’ Simmons v. United States, 390 U.S. [377], at 384, 88 S.Ct. [967], at 971, [19 L.Ed.2d 1247].” 409 U.S. at 198, 93 S.Ct. at 381, 34 L.Ed.2d at 410. The Court then set out guidelines to aid in establishing the relationship between suggestiveness and misidentification. The Court determined that the basis for the exclusion of tainted identification testimony is mis-identification and that
*558 the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of the witness’ prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411.
The Neil decision was relied on by this court in State v. Sepulvado, 362 So.2d 324 (Fla. 2d DCA 1978), cert. denied, 368 So.2d 1374 (Fla.1979).
Applying the Neil criteria to the facts in the instant case, it becomes apparent that there was no substantial likelihood of irreparable misidentification:
(1) The Opportunity to View. Ruth Collinett stood face to face with the man in the parking lot for five to ten seconds.
(2) The Degree of Attention. She approached the man because she thought he was a friend of hers. She conversed with him briefly upon discovering that he was not her friend.
(3) The Accuracy of the Prior Description. Mrs. Collinet was able to remember the man’s features from their conversation in the parking lot and accurately describe him to the police.
(4) The Witness’ Level of Certainty. During the first photographic display, she indicated that one photograph resembled the man but she was not sure and wanted to see a better photograph. After inspecting the five-photograph pack, she had no difficulty selecting appellee’s photograph. "After she observed appellee closely at the hearing, she had no difficulty identifying him.
(5) The Time Between the Crime and the Confrontation. Mrs. Collinett testified that she inspected the first set of photographs the next day and the second set a couple of days later. Sergeant Bland testified that he displayed both “photopaks” to Mrs. Collinett within the same day.
Assuming arguendo that the procedure of initially displaying to Mrs. Collinett two photographs of the appellee and then displaying to her a “photopak” of five photographs including one of the appellee was suggestive, it was not so impermissibly suggestive as to create a substantial likelihood of misidentification under the totality of the circumstances of this case.
Because we hold that a jury should be permitted to consider and weigh witness Collinett’s testimony, we reverse the order of the trial court and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
OTT, Acting C. J., and RYDER, J., concur.

. The trial court denied the state’s motion for extension of speedy trial time pending appeal. This court reviewed and vacated the trial court’s order; therefore, speedy trial time has been extended. We anticipate a reduction in problems in the area of speedy trial beginning January 1, 1981, as a result of new Florida Rule of Criminal Procedure 3.191 which becomes effective on that date. The new rule is previewed in State v. Jenkins, - So.2d - No. 52,484 (Fla., July 24, 1980), in which the supreme court addressed current problems in this area.