696 P.2d 1327

**STATE of Arizona, Appellee,**

v.

**Robert Carrasco GAMEZ, Appellant.**

**No. 6352–PR.**

Supreme Court of Arizona,
In Banc.

Feb. 21, 1985.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Criminal Division, Asst. Atty. Gen., Crane McClennen, Asst. Atty. Gen., Phoenix, for appellee.

Wallace R. Hoggatt, Douglas, former Atty. for appellant.

Jim Himelic, Tucson, for appellant.

GORDON, Vice Chief Justice:

After a jury trial, defendant was found guilty of second degree burglary and theft. The trial court found two prior felony convictions and sentenced defendant to 11.25 years on the burglary conviction and 3.75 years on the theft conviction to be served concurrently.

On January 11, 1983, officers of the "Joint City-County Major Offenders Unit" undertook surveillance of defendant. Seven to nine officers participated in the surveillance, which started at 9:30 a.m. and continued until defendant's arrest between 7:00 and 8:00 p.m. The officers observed defendant drive his car in several areas including the vicinity of the burglary. Defendant's girlfriend-passenger was observed leaving the car and knocking on the door of a private home at 4310 East La Jolla in Tucson. She received no answer and returned to the car, which defendant then parked nearby. Defendant left the car and was seen entering the front porch area of the 4310 East La Jolla residence. A few minutes later, two officers saw defendant emerge from between two other houses in the area. Defendant walked back past his parked car with his fists clenched and motioned for his girlfriend to pick him up. None of the officers, however, actually saw defendant carrying anything from the residential area. Shortly thereafter officers discovered that a window had been broken at the back door of the 4310 East La Jolla residence and that two gold necklaces and a pair of gold earrings were missing. Shoeprints found outside the house were consistent with the

shoes defendant wore at the time he was arrested, but could not be positively identified.

Defendant was arrested and advised of his *Miranda* rights. He asked why he had been arrested and was told it was for burglary. Defendant denied any involvement. An officer then told defendant that he had been under surveillance all the time. When the officer asked him if his girlfriend had been involved, defendant said, "It is my fault, I did it myself." As the officer placed defendant in the patrol car, defendant told him, "I don't want to talk to you anymore." No further discussion took place on the way to the police station. As the officer and defendant were walking up the steps of the station, however, defendant began talking again and eventually responded to a question about the jewelry with a statement that he threw it out the window.

The primary issue that we consider in this petition for review is whether the jury was improperly informed of other bad acts by defendant.[1] We have jurisdiction pursuant to Ariz.Const. art. 6 § 5(3) and Ariz.R. Crim.P. 31.19.

Two statements are involved. As to the first, prior to trial defense counsel made a motion to preclude the officers from mentioning the name of the particular police unit that was watching defendant, the "major offenders unit", because it made defendant "sound like a major offender in the eyes of the jury." The trial judge denied that motion. Consequently during examination of the officers by the prosecution, the "major offenders unit" detail was mentioned nine times in connection with the assignment of the officers who testified as to the surveillance activity of defendant. Additionally, the prosecutor brought this fact out in closing argument stating "in this particular case we had a number of police officers from the major offender's unit and police officers, they went out and watched [defendant] and they watched him

all day long." The Court of Appeals found no problem with the use of this term because it believed "this fact was not evidence that appellant had committed other crimes." We disagree.

■ Generally evidence of prior bad acts is not admissible to prove guilt of another crime. *State v. Ferguson*, 120 Ariz. 345, 586 P.2d 190 (1978); *State v. Mitchell*, 112 Ariz. 592, 545 P.2d 49 (1976). Evidence of this nature is excluded in part to avoid confusing the jury and to prevent its attention from being distracted from the real issues of the case. *State v. Swinburne*, 116 Ariz. 403, 569 P.2d 833 (1977); *State v. Hughes*, 102 Ariz. 118, 426 P.2d 386 (1967). This rule is based on the fact that the jury will think the defendant is an evil person and will convict him on lesser evidence than might ordinarily be necessary to support a conviction. *State v. Deschamps*, 105 Ariz. 530, 468 P.2d 383 (1970); *State v. Johnson*, 94 Ariz. 303, 383 P.2d 862 (1963).

■ Although the assignment name "major offenders unit" does not specifically state that defendant committed other robberies, it strongly infers that he has been involved in other criminal activity. As is implicit from its title, this unit concerns itself with major offenders. Thus, in effect, the title labels defendant as a major offender because he was the target of the police surveillance. The word "major" connotes larger or greater in rank or importance. Webster's Third New World International Dictionary 1363 (1976). Accordingly, the assignment name suggests that the type of offender the police in this unit were concerned with was not a "small time operator" but a habitual offender, and that this was not a small case but a very important one for the police to solve.

We note the variety of cases disapproving of comments during trial that link a defendant to other crimes. *See, e.g., State v. Kelly*, 111 Ariz. 181, 526 P.2d 720 (1974) *cert. denied*, 420 U.S. 935, 95 S.Ct. 1143, 43

---

1. Defendant raised a second issue in his petition for review: whether the trial court erred in not granting a mistrial based on a reference to defendant's post arrest silence. Because we approve the Court of Appeals' disposition of this issue, we need not discuss it.

L.Ed.2d 411 (1975) (introduction of mug shot or mention of mug shots error where it gives rise to inference defendant had a prior criminal record); *State v. Moore*, 108 Ariz. 215, 495 P.2d 445 (1972) (admission of "mug shot" prejudicial error where jury told taken two months before subject crime); *State v. Bailey*, 132 Ariz. 472, 647 P.2d 170 (1982) (references to white surgical gloves found in defendant's possession as being "burglar gloves" improper as implying that defendant had committed prior bad acts). *State v. Green*, 110 Ariz. 293, 518 P.2d 116 (1974) (prejudicial error to refer to defendant as "dealer"). We believe that labeling defendant as a "major offender" is equally if not more suggestive of prior bad acts than the matters found prejudicial in the above-cited cases.

While we recognize that officers can testify about their assignments and duties if such testimony does not suggest that defendant committed a crime, there was no reason to bring to the jury's attention the fact that certain of the officers conducting the surveillance belonged to the "major offenders unit." It added nothing to the scenario of the crime, and this case could have been successfully prosecuted without its mention. *But cf. State v. Johnson*, 11 Ariz.App. 478, 466 P.2d 29 (1970) (testimony by officers that they were engaged in surveillance of defendant necessary to complete the story). It was error to use the name "major offenders unit" in this case.

As to the second statement, defendant argues that it was improper for the prosecutor to state in his rebuttal argument that defendant "is good at what he does". The Court of Appeals concluded that this argument was permissible and did not necessarily imply prior bad acts. We disagree.

This statement infers that defendant has prior experience as a burglar, since one becomes good by previous practice. Thus this statement should not have been used.

■ Although we believe that use of the above two statements was improper, we find that any error was harmless beyond a reasonable doubt. If it can be said that the error, beyond a reasonable doubt, had no influence on the verdict of the jury, then we will not reverse. *State v. McVay*, 127 Ariz. 450, 622 P.2d 9 (1981); *State v. Brady*, 105 Ariz. 190, 461 P.2d 488 (1969). Because of the overwhelming evidence of defendant's guilt in this case, the admission of these statements had little impact, if any, on the jury's decision. We would like to make it clear, however, that we disapprove of the use of such terms and warn counsel that in cases with less than overwhelming evidence, use of such statements could constitute reversible error.

Pursuant to A.R.S. § 13–4035 we have searched the record for fundamental error and have found none. The judgment of conviction and the sentence imposed are affirmed. The portion of the Court of Appeals' memorandum decision relating to the issue discussed herein is vacated, and the rest of the memorandum decision is approved.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.