701 P.2d 1178

**STATE of Arizona, Appellee,**

v.

**Jose Luis ALVAREZ, Appellant.**

No. 6477.

Supreme Court of Arizona,
In Banc.

July 2, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Greg A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

Charles M. Giles, P.C., Jim D. Himelic, P.C. by Jim D. Himelic, Tucson, for appellant.

CAMERON, Justice.

Defendant, Jose Luis Alvarez, was convicted by a jury of the crimes of armed robbery, A.R.S. § 13–1904; burglary in the first degree, A.R.S. § 13–1508; and kidnapping, A.R.S. § 13–1304. Each offense was of a dangerous nature and committed while defendant was on release from confinement for prior felonies. A.R.S. § 13–604.-01. Defendant was sentenced to three concurrent terms of life imprisonment and appeals. *Id.* We have jurisdiction pursuant to Art. 6, § 5(3) of the Arizona Constitution, and A.R.S. §§ 13–4031 and –4035.

Defendant raises two issues on appeal:
1. Was defendant subjected to unduly suggestive pretrial identification procedures such that subsequent in-court identifications should have been suppressed?
2. Did the prosecutor improperly comment on defendant's prior criminal conduct?

The facts necessary for a determination of this matter are as follows. Around noon on 11 January 1984, the victim, Deborah Baily, and her three year old daughter, were weeding their yard in a rural area northeast of Tucson. The victim observed a blue Chevrolet Blazer drive by a number of times but thought nothing of it. Upon entering her house, she was confronted by an intruder wearing a ski mask who demanded money. When he learned that the victim had only $50.00 in cash, he insisted that they drive to the victim's bank so that she could cash a check in the amount of $1,000. During the trip, the victim had the opportunity to observe the left side of defendant's face when he lifted his mask for a few seconds. The victim later made both in and out-of-court identifications of defendant.

Defendant was further connected to the crime through the Chevrolet Blazer. Around the time of the offenses, he had access to a Blazer through his girlfriend who was loaned one while her own car was being repaired. Testimony was adduced at trial that the Blazer lent to defendant's girlfriend was an unusual two-wheel drive, two-tone model which matched the description of the vehicle seen in the victim's neighborhood around the time of the offenses.

## IDENTIFICATION PROCEDURES

Before trial, a hearing was held pursuant to *State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied,* 397 U.S. 966, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970). The trial court refused to suppress the in-court identification of defendant. On appeal, defendant claims that he was subjected to pretrial identification procedures which were unduly suggestive in three regards: (1) his was the only photograph common to both lineups shown to the victim, (2) he was the only one pictured who had facial moles, and (3) even though defendant was Hispanic, his photograph appeared in a lineup consisting primarily of Blacks.

a. Only photograph in both lineups.

Defendant maintains that the out-of-court identification procedure used in this case was unduly suggestive because his photograph was the only one common to the two photographic lineups viewed by the victim. In the first lineup, which depicted only full frontal views, the victim picked

two persons who looked like defendant. One, in fact, was a picture of defendant. In the second lineup, containing only profile shots, the victim positively identified defendant. She explained that because she had only viewed her assailant's profile, her identification of defendant was aided by a lineup consisting of only profile photographs. She testified that she was not aware that defendant's photograph appeared in both lineups.

■ Recently, we addressed the issue which defendant raises. In *State v. Via*, 146 Ariz. 108, 119–120, 704 P.2d 238, 249–250 (1985), we disapproved of the practice of showing witnesses multiple lineups having only the prime suspect's photograph in common. We stated, however, that the fact that a defendant's photograph was the only one to appear twice was not necessarily fatal. Under the "totality of the circumstances," a witness' identification of a defendant can be reliable despite suggestive pretrial identification procedures. 146 Ariz. at 120, 704 P.2d at 250. We stated that:

[t]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.*, (quoting *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972)).

■ In the instant case, the victim viewed defendant on a bright day while sitting next to him in the cab of her pickup truck. Although only able to observe defendant for approximately three seconds, the victim stated that she focused her attention upon him because she "was afraid that when he was finished with us that he would kill us and I wanted to see who was doing this to me." Under such circumstances, where a victim rivets her attention upon her attacker, the reliability of her

subsequent identification of him is enhanced. *State v. Bracy*, 145 Ariz. 520, 531, 703 P.2d 464, 475 (1985); *see also State v. Britton*, 387 So.2d 556, 558 (Fla.App.1980) (although able to view the defendant for only five to ten seconds, identification was reliable where the victim focused her attention upon her attacker).

■ Another factor is the degree of certainty the victim expressed in her identification of defendant. Upon being shown the second lineup, she immediately and without hesitation picked out defendant's photograph. When asked why she picked defendant's photograph, she responded, "[b]ecause that was the man that robbed me." We find no error.

b. Facial moles.

■ Defendant has a number of small moles on the left side of his face. These were observed by the victim when defendant briefly lifted his mask. Defendant claims the lineup was unduly suggestive because he was the only one with moles in the lineup. We do not agree.

Recently we decided an issue very similar to the one now before us. In *State v. Perea*, 142 Ariz. 352, 690 P.2d 71 (1984), the defendant claimed that he was subjected to an unduly suggestive photographic lineup because he was the only one pictured who had a unique facial feature, a small tattoo. We rejected this claim quoting from the Maryland Court of Appeals:

Appellant argues that his mark is unique. Every individual is unique. The mouth, the lips, the teeth, the chin, the cheeks, the nose, the eyes, the forehead, the ears, the hair, or any combination of two or more of those and other features, make every individual unique. They make him different from all others. They are the basis upon which any person is visually distinguished from other persons. The more subtle the distinctions, the more difficult the identification, and the greater the potential for error. If the burglar in this case had not

had such a distinctive mark, then Sallie's mark would have cleared him forthwith as a suspect. The fact that the burglar had the mark, and that Sallie had it, and that the mark is unique, made his identification inevitable indeed, but also made it more rather than less reliable.

*Perea, supra,* at 356, 690 P.2d at 75 (citations omitted). We see little to distinguish *Perea* from the case at bar. We find no error.

c. Racial makeup of the lineup.

The victim described her assailant as a Hispanic with certain Negroid features. The police assembled the second lineup to include defendant, another Hispanic and four Blacks. In it, defendant's skin color appears reasonably comparable to the others depicted, and his hair is styled in an afro fashion similar to that worn by the Blacks in the lineup. Defendant maintains, nevertheless, that it was improper to include his photograph in a lineup composed primarily of Blacks. We do not agree.

█ Lineups need not and usually cannot be ideally constituted. *State v. Henderson,* 116 Ariz. 310, 315, 569 P.2d 252, 257 (App.1977). Rather, the law only requires that they depict individuals who basically resemble one another such that the suspect's photograph does not stand out. *See State v. Martinez,* 121 Ariz. 62, 64, 588 P.2d 355, 357 (App.1978). We believe that the lineup in the instant case meets this requirement. Although defendant is Hispanic, his skin tone and hairstyle were similar to those of the other members of the lineup. From these facts and a view of the photographic lineup, we do not believe that the composition of the lineup was improper. *See Viveros v. State,* 606 P.2d 790, 791–93 (Alaska 1980); *People v. Guillebeau,* 107 Cal.App.3d 531, 557, 166 Cal.Rptr. 45, 59 (1980); *Shepard v. State,* 273 Ind. 295, 404 N.E.2d 1, 5–6 (1980). We find no error.

## PRIOR BAD ACTS

Defendant's main defense was that of mistaken identity. He claimed that the man who burglarized the victim's home was familiar with the location of items in it and, therefore, must have known the victim. The State countered this scenario with its assertion in closing arguments that a "good crook" could have gained knowledge of the victim's home in the period before she entered. Defendant contends that the prosecutor's comments mandate a reversal. We do not agree.

Our rules of evidence provide in pertinent part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Rule 404(b), Arizona Rules of Evidence, 17A A.R.S. Defendant cites the case of *State v. Gamez,* 144 Ariz. 178, 696 P.2d 1327 (1985) for the proposition that the prosecutor's comments in this case violated Rule 404(b). In *Gamez,* we found the prosecutor's statement that the defendant "is good at what he does[,]" violative of the rule. *Id.* at 180, 696 P.2d at 1329.

█ We do not believe that *Gamez* is directly applicable to the facts before us. In the instant case, the prosecutor made his remarks in an effort to refute defendant's theory of the case. Prosecutorial comments which are a fair rebuttal to areas opened by the defense are proper. *State v. Martinez,* 130 Ariz. 80, 82–83, 634 P.2d 7, 9–10 (App.1981). We find no error.

Defendant further contends, however, that the trial court erred in failing to grant his motion for a mistrial based upon a detective's statement that defendant was in custody when the photograph used in the second lineup was taken.

During trial the following dialogue took place between the prosecutor and Detective Al Weiler:

Q Why did you prepare the second photographic lineup?

A Okay. A couple of reasons. Number one, the victim has told me that she never saw the individual from a frontal view. Okay. At the time I showed her this particular lineup, which was the first one, that was the only picture I had.

374

Q Okay. Just tell us—tell me why you did a second one.

A The second one was—we had Mr. Alvarez at that time in custody, and I had—

MS. DAVIS: Objection, Your Honor, move to strike. Can we approach the bench?

In denying defendant's motion for a mistrial, the trial judge stated that "[t]here is nothing objectionable [about stating] that he was in custody. Undoubtedly he was arrested at some point."

■ We have stated that "[t]he introduction into evidence of mug shots, or the mention of the fact that defendant had mug shots taken prior to the arrest in the case at trial, can be error when they infer that the defendant has a prior arrest record." *State v. Kelly,* 111 Ariz. 181, 189, 526 P.2d 720, 728 (1974), *cert. denied,* 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975). Conversely, where the contested statements relate "solely to the offense charged and in no manner reflected any inference of a prior arrest record[,]" they are not objectionable. *State v. Spain,* 27 Ariz.App. 752, 755, 558 P.2d 947, 950 (1976).

■ We do not find the contested statement improper. Read in context, the statement does not indicate anything other than that defendant was in custody for the crimes with which he was charged at the time the photograph was taken. We find no error.

We have searched the record for fundamental error pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969), and have found none.

The convictions, judgments, and sentences are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.