897 P.2d 1371

**STATE of Arizona, Appellee,**

v.

**Greg Manuel OLEA, Appellant.**

No. 1 CA–CR 93–0069.

Court of Appeals of Arizona, Division 1, Department E.

Feb. 2, 1995.

Review Denied July 11, 1995.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, and Greg A. McCarthy, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Lawrence S. Matthew, Deputy Public Defender, Phoenix, for appellant.

## OPINION

LANKFORD, Presiding Judge.

Greg Manuel Olea ("defendant") asks us to reverse his conviction and sentence for use of a narcotic drug in violation of Arizona Revised Statutes ("A.R.S.") section 13–3408(A)(1), a class 4 felony.

Defendant was a constable for the East Phoenix Justice Court. On January 15, 1992, defendant was experiencing problems with his county-issued car. He arranged to bring it into the county maintenance and repair facility (the "garage") at Fourth Avenue and Madison Streets in Phoenix for repair. When he arrived at the garage, defendant arranged to have the car cleaned as well as repaired. He then left for a prior appointment.

A prisoner at the Durango jail facility with trustee status had been assigned to a work detail at the garage on January 15 as part of a two-for-one incarceration time credit program. While cleaning defendant's car, the trustee found a plastic packet containing a small amount of white powder. Suspecting that the contents of the packet might be cocaine, she reported it to two mechanics employed at the garage. Subsequent field testing revealed that the packet contained .45 grams of cocaine.

Upon defendant's return to the garage approximately one hour later, one of the mechanics spoke with defendant concerning the packet. Defendant immediately telephoned Maricopa County Attorney Rick Romley (whose office was located directly across the street from the garage) and demanded that Romley meet with defendant in Romley's office right away. Defendant then walked across the street, packet in hand, to Romley's office. He went into the office, threw the packet on Romley's desk, stated that he was being "set up," and requested an investigation.

Two investigators from the county attorney's office then met with defendant at Romley's request. The investigators suggested that defendant take a drug screening test for purposes of proving that he was not a drug user. Defendant agreed and submitted to a screening test that morning at the Treatment Assessment Screening Center ("TASC") facility. The test result was positive for cocaine. A subsequent, more sophisticated sci-

entific test confirmed that result. Finally, an independent laboratory in California confirmed the TASC result by analyzing a portion of the urine sample that defendant had provided to TASC.

Although the positive test result was made known to the county attorney's office later in the day, defendant did not learn of the result until several days later. After learning of the positive test result, defendant underwent a subsequent urinalysis drug screening test by an independent laboratory. That test result was negative. Several months later, defendant had a "radioimmunoassay" test performed on a sample of his hair for the purpose of detecting past drug use. The result of that test was also negative.

A Maricopa County grand jury returned a one count indictment against defendant charging that he "did knowingly possess or use a narcotic drug, to wit; .45 grams of cocaine" in violation of A.R.S. section 13–3408(A)(1). The trial court found the indictment to be duplicitous and ordered the state to elect a charge of either use or possession. The state elected use. The state did *not* allege that defendant had used .45 grams of cocaine. In fact, the grand jury transcript reveals that the only evidence of that quantity referred to the amount of drug found in defendant's vehicle.

The court did not delete the language referring to quantity (".45 grams of") from the indictment until the first day of trial when, on the state's motion and over defendant's objection, the court amended the indictment by striking the reference to quantity. The indictment as read to the jury alleged that defendant "did knowingly use a narcotic drug, to wit: cocaine."

The evidence of drug use at trial consisted of the drugs found in the car and the positive test results. The defense theorized that a third party put the drugs in the car, and speculated that the positive test result was caused by problems in the sample collection and/or the test methodology. The trial court refused to admit into evidence the negative

results from the later urine and hair tests. Defendant was likewise unsuccessful in his attempt to exclude from evidence the bag of cocaine recovered from his county-issued vehicle.

The jury returned a guilty verdict. Defendant received a suspended sentence and a term of probation. The court also imposed a fine and ordered defendant to perform community service.

Defendant filed a timely appeal from his conviction over which this court has jurisdiction. Ariz. Const. art. VI, § 9; A.R.S. §§ 12–120.21(A)(1), 13–4031, 13–4033(A).

The appeal raises the following issues:

1. Does conviction for *use* of a narcotic drug under A.R.S. § 13–3408(A)(1) require a showing that defendant used a "usable" amount of cocaine, rendering it error for the trial court to have refused a jury instruction that conviction required a finding that defendant used a "usable" amount of cocaine?

2. Did the trial court properly amend the indictment at the outset of the trial by striking language specifying the amount of cocaine?

3. Is the portion of A.R.S. § 13–3408(A)(1) making it illegal to use a narcotic drug unconstitutionally void for vagueness?

4. Did the trial court abuse its discretion by admitting the packet of cocaine into evidence?

5. Did the trial court abuse its discretion in refusing to admit the two negative test results into evidence?

## I.

■ We hold that conviction under A.R.S. section 13–3408(A)(1) does not require an independent showing that the defendant used a "usable" amount of a narcotic drug. Section 13–3408(A)(1) provides simply that "[a] person shall not knowingly possess or use a narcotic drug." Although the trial court instructed the jury as to proof of the crime

charged,[1] the court refused to give an instruction requested by defendant which would have required proof that the defendant used a "usable" quantity of a narcotic drug.

Defendant cites *State v. Moreno*, 92 Ariz. 116, 120, 374 P.2d 872, 875 (1962), in support of his argument that it was error to refuse his requested instruction. However, that case involved a defendant charged with unlawful *possession* of heroin. The Arizona Supreme Court held that conviction required a finding that the quantity of the drug possessed by defendant be "usable under the known practices of narcotic addicts." 92 Ariz. at 120, 374 P.2d 872. Accordingly, "only in those cases where the amount is incapable of being put to any effective use will the evidence be insufficient to support a conviction." *Id.* Similarly, the dissent cites only cases involving possession of drugs.

Here, defendant is charged with the unlawful *use* of a narcotic drug. We reject the argument that *Moreno* is applicable to a conviction for use. Our supreme court has consistently declined to extend the "usable" quantity requirement to the *sale* of drugs. *State v. Ballesteros*, 100 Ariz. 262, 413 P.2d 739 (1966); *State v. Espinosa*, 101 Ariz. 474, 476, 421 P.2d 322, 324 (1966); *State v. Ballinger*, 110 Ariz. 422, 520 P.2d 294 (1974). "It is the sale of *any* amount of narcotics which is prohibited." *State v. Espinosa*, 101 Ariz. at 476, 421 P.2d at 324 (emphasis added).

■ Under the use statute, the quantity of cocaine used by defendant is equally irrelevant: It is the use which the statute criminalizes. *Cf. State v. Phillips*, 178 Ariz. 368, 369–370 n. 1, 873 P.2d 706, 707–708 n. 1 (App.

1994) (statute forbidding operation of motor vehicle "while there is *any* drug ... or its metabolite in the person's body.") (quoting A.R.S. § 28–692.01(A)) (emphasis added). The Arizona Legislature has not said that cocaine is lawful if the amount of the drug is less than some threshold quantity. Nor has the legislature forbidden the State from proving use by testing for drug metabolites. To engraft such requirements onto the statute would severely limit its scope and could allow drug use to go unpunished.[2]

In short, nothing in either statute or the case law requires that the State prove a "usable" amount to convict for use of narcotics. The issue is simply whether defendant did or did not knowingly use cocaine.

Moreover, one who has "used" cocaine has, by definition, availed himself of a "usable" amount of the drug. The question posed in possession cases—whether the amount involved was usable—has been implicitly but necessarily answered. The dissent argues that this is "circular." (Slip Opinion at ——, infra). In fact it is a matter of definition: If a person has used a drug—defined by the trial court's instructions here as "inject, ingest, inhale or otherwise introduce into the human body"—then the amount of the drug was shown to be usable by the very fact of its use.

The dissent argues that the urinalysis did not establish the amount of cocaine that the defendant used. (Slip Opinion at 1380). The dissent is correct on this point. In fact, the expert evidence in this case was uncontroverted that urinalysis simply cannot determine how much cocaine was used and can only show that it was in fact used within hours preceding the test.

---

1. The court gave the following instruction:
   Now, the crime of use of a narcotic drug requires proof that the defendant knowingly used a narcotic drug. Use means inject, ingest, inhale or otherwise introduce into the human body.

2. It is unnecessary—even in possession cases—to show that the amount was sufficient to produce a narcotic effect. *State v. Murray*, 162 Ariz. 211, 213, 782 P.2d 329, 331 (App.1989). Indeed, the difficulty in correlating the quantity of drugs or

their metabolites found in the body and the degree of impairment supports the criminalization of use of any amount of drug. *See State v. Phillips*, 178 Ariz. at 372, 873 P.2d at 710 ("the legislature could have rationally determined that the absence of a reliable indicator of impairment necessitated a flat ban on driving with any proscribed drugs in one's system."). Just as the legislature may forbid *sale* of any amount of drugs, it may forbid *use* of any amount.

Nevertheless, the scientific evidence established the necessary factual predicate for conviction: defendant had used cocaine. Three scientific tests performed on defendant confirmed that he had ingested cocaine. All three tests yielded "positive" results: i.e., the amount of the cocaine metabolites in the urine exceeded the scientifically accepted threshold for detecting cocaine use. Although defendant speculated that errors had occurred in the testing methods, there was no evidence of any such errors. The State's experts testified without contradiction that when properly conducted, such tests show without any doubt whatever that cocaine had been used.

The trial court did not err in refusing the requested instruction requiring that the State prove a usable amount.

## II.

■ We reject the defendant's argument that the amendment of the indictment constitutes reversible error. The trial court correctly concluded that its amendment of the indictment was technical in nature and did not prejudice defendant's case.

Defendant contends that the trial court altered the substance of the original charge and impermissibly broadened the basis for the conviction by striking the words ".45 grams of" from the indictment. We disagree.

■ Rule 13.5 of the Arizona Rules of Criminal Procedure limits amendment of an indictment "to correct mistakes of fact or remedy formal or technical defects, unless the defendant consents to the amendment." An amendment goes beyond "formal or technical defects" when it alters the substance of the charge. State v. Kelly, 123 Ariz. 24, 26, 597 P.2d 177, 179 (1979). An amendment is substantive if it changes the nature of the offense charged. State v. O'Haire, 149 Ariz. 518, 520, 720 P.2d 119, 121 (App.1986). A substantive amendment is reversible error if it prejudices the defendant. State v. Kelly, 123 Ariz. at 26, 597 P.2d at 179.

We must now determine whether the trial court's deletion of the quantity language effectively charged "new and different matters of substance" and prejudiced defendant's ability to defend at trial. State v. Kelly, 123 Ariz. at 26, 597 P.2d at 179; O'Haire, 149 Ariz. at 520, 720 P.2d at 121.

Because conviction for use of narcotic drugs under section 13–3408(A)(1) does not require proof that a defendant used any certain quantity of an illegal drug, the quantity allegation was unnecessary. The deletion of a superfluous allegation did not change the nature of the charge. See State v. Suarez, 137 Ariz. 368, 380, 670 P.2d 1192, 1204 (App. 1983) (unnecessary statutory reference in indictment was properly deleted as surplusage). The trial court's deletion of the words ".45 grams of" did not result in a trial on "an offense different from that with which (defendant) was originally charged." State v. Rybolt, 133 Ariz. 276, 280, 650 P.2d 1258, 1262 (App.1982), overruled in part on other grounds State v. Diaz, 142 Ariz. 119, 688 P.2d 1011 (1984). In fact, it would be physically impossible for the defendant to have "used" the .45 grams of cocaine. That was the quantity of unused cocaine found in his possession. If defendant had used that amount, it would have been inside his body and could not have been found in the plastic packet inside his vehicle. The grand jury testimony was unequivocal that .45 grams referred to the quantity of the drug found in the packet. Nothing in the entire record of this case either suggests that the grand jury intended to indict defendant for having used .45 grams of cocaine, or could have misled defendant into thinking that the State had alleged he consumed .45 grams of cocaine. His early and continuing efforts to obtain drug tests illustrate that he understood throughout the case that the charge of use was based from the beginning on the bag of cocaine and the test results. That was the same evidence on which his conviction rested. The amendment was a technical one, not substantive, and within the trial court's discretion to allow. See State v. Delgado, 174 Ariz. 252, 254, 848 P.2d 337, 339 (App.1993).

The defendant is not entitled to take advantage of the technical oversight of failing to immediately delete the quantity allegation after the State elected to pursue the use charge rather than the possession charge.

## III.

■ Defendant argues that A.R.S. section 13–3408(A)(1) is void for vagueness because it includes the term "use" without defining it. We disagree and hold that the language in section 13–3408(A)(1) is sufficiently clear to apprise ordinary citizens of the prohibited conduct.

■ A statute is unconstitutionally vague only if it "defines the prohibited conduct in such indefinite terms that a person of common intelligence must guess at its meaning." *State v. Martin,* 174 Ariz. 118, 121, 847 P.2d 619, 622 (App.1992). We are satisfied that the term "use"—at least in the context of narcotic drug use—is susceptible of common understanding, and that the trial court adequately defined "use" in the jury instructions as "inject, ingest, inhale or otherwise introduce into the human body." Accordingly, defendant was not left to guess that his conduct might be unlawful, and his vagueness challenge fails.

Defendant relies on *Weissman v. United States,* 373 F.2d 799 (9th Cir.1967), but that case is distinguishable. In that case, the court declared unconstitutional a statute requiring registration by persons who "use narcotic drugs" upon departing from or returning to the United States. The court concluded that it could not adopt the dictionary definition of the term "use" without creating unintended categories of criminals, including those who lawfully use drugs containing narcotic substances, those who unknowingly ingest a narcotic drug, and those who may have taken a narcotic drug long before leaving or returning to the United States. 373 F.2d at 802. The Arizona statute prohibits *knowing* use of a narcotic drug, a narrower proscription than the use *per se* referred to in the federal statute. Persons

using drugs lawfully prescribed for them are expressly exempted from criminal liability by A.R.S. section 13–3412(A)(7).

We conclude that our legislature proscribed illicit drug use with sufficient clarity. *Cf. State v. Phillips,* 178 Ariz. at 370–371, 873 P.2d at 708–709 (statute criminalizing operation of vehicle while any drug or its metabolite is in the body held constitutional).

## IV.

Defendant argues that the trial court erred in admitting the packet of cocaine into evidence. Because the state charged defendant with *use* of cocaine rather than *possession,* defendant argues, the packet was irrelevant. Alternatively, he claims that any probative value it may have had was outweighed by the danger of unfair prejudice. *See* Rule 403, Arizona Rules of Evidence (the "Rules"). Finally, he contends that the packet was inadmissible evidence of other bad acts under Rule 404(b).

■ The trial court has the discretion to determine whether relevant evidence is more probative than prejudicial, and we will not disturb its decision unless that discretion was abused. *State v. Salazar,* 173 Ariz. 399, 844 P.2d 566 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993). The abuse of discretion standard of review applies to the trial court's rulings under both Rules 403 and 404(b). *See Salazar,* 173 Ariz. at 406, 844 P.2d at 573 (Rule 403); *State v. Woody,* 173 Ariz. 561, 563, 845 P.2d 487, 489 (App.1992) (Rule 404).

■ The analysis under Rule 403 is twofold. *Salazar,* 173 Ariz. at 406, 844 P.2d at 573. The first inquiry is whether the evidence was relevant. As the trial court noted, the fact that cocaine was found in defendant's car tends to make the proposition in issue (whether defendant used cocaine) more probable than not. The presence of the drug in defendant's car—although he was not charged with possession—is evidence of defendant's knowledge and access to cocaine,

and thus is circumstantial evidence of use. The trial court did not abuse its discretion in finding the evidence relevant.

The second inquiry is whether the evidence would tend to incite passion or inflame the jury and, if so, whether the trial court weighed the probative value against the prejudicial impact. *Salazar*, 173 Ariz. at 406–07, 844 P.2d at 573–74. It is conceivable that the sight of a plastic bag with cocaine in it might have some tendency to prejudice some jurors. However, it was reasonable for the trial court to conclude that the probative value of the physical evidence outweighed its potential for unfair prejudice under Rule 403. The bag is probative evidence. The trial court is in the best position to weigh one consideration against the other, and the record reveals nothing that indicates that the court abused its discretion in determining that the bag of cocaine was more probative than prejudicial.

■ Defendant also argues that the packet of cocaine was inadmissible evidence of other bad acts under Rule 404(b). Defendant cites *State v. Torres*, 162 Ariz. 70, 781 P.2d 47 (App.1989), in support of his argument. *Torres* involved a defendant charged with heroin possession. The trial court erroneously admitted evidence of the defendant's prior drug use. Reversal was predicated upon this court's conclusion that none of the exceptions set forth in Rule 404(b)—motive, knowledge, intent, absence of mistake, or accident—was in issue.

*Torres*, however, does not apply in this case. The packet was evidence of this defendant's knowing use of the drug. Indeed, it was important evidence because defendant argued that the results of his drug test were mistaken, and the fact that cocaine was found in defendant's car tends to negate that theory.

We find no error in the trial court's admission of the packet of cocaine into evidence. ·

## V.

■ Defendant's final argument is that the trial court erroneously excluded the evidence of negative results of hair and urine drug screening tests. The trial court excluded this evidence as irrelevant.

The urine test was taken eight days after discovery of drugs in defendant's car. However, a urine test will not detect the presence of cocaine in a person's body if cocaine was used more than three or four days before the urine sample is collected. The trial court reasoned that the results of a test made on a sample collected on January 23, 1992, could shed no light on defendant's use of cocaine on or about January 15, 1992, as charged in the indictment.

The hair test was performed several months after the TASC urine screening. Defendant's expert testified that the hair test was effective in identifying chronic cocaine use (defined as at least three instances of use within a period of one week), but that it was ineffective for purposes of identifying a one-time or occasional use. The court excluded the hair test as well because it was irrelevant to the single charged incident of cocaine use.[3]

We disagree with the trial court's conclusion that the evidence had no probative weight whatsoever. Because cocaine users are likely to be habitual users—a proposition advanced by defense counsel in the trial court and unchallenged there—the evidence offered by defendant was relevant. The urine test revealed no cocaine eight days after the initial test, even though cocaine is detectable up to three or four days after use. The hair test tended to show that defendant

---

**3.** The court made apparently contradictory statements regarding the admissibility of the test results under Rule 403: "And I am inclined to find that, if it has any relevance, I mean it is really marginal and that it's [sic] probative value is really outweighed by confusing the issues, misleading the jury, taking up time, injecting other issues into the case that they may have to confront. And so, you know, for the record, as I said, if it was relevant, I'd let it come in ... I just don't think the evidence is relevant." Because the record fails to clearly reflect that the trial court exercised its discretion to exclude the evidence on Rule 403 grounds, we reach only the relevancy question.

had not engaged in chronic use in the months after the initial urine test. Both tests tended to show that defendant was not an habitual user, and by inference based on the likelihood that cocaine users are habitual users, that defendant did not use cocaine at all.

The inference is a weak one, however. This is particularly so in light of the limitations of the hair test and the absence from the record of medical or statistical information about cocaine addiction.

In light of the evidence on the record that the positive test results established defendant's cocaine use with extreme scientific reliability, we find that any error in rejecting defendant's test results was harmless. Two urine tests, performed by separate laboratories based on the sample initially taken from defendant, yielded positive results. The evidence revealed no sample collection errors or deviations from accepted test protocol. Both analyses were performed by the state-of-the-art method of gas chromatography and mass spectrometry. This analysis, according to expert testimony in the trial court, is "100 percent" accurate if performed correctly. In addition to the test results, physical evidence in the form of the cocaine itself pointed to defendant's guilt. In the face of the strong evidence of guilt and the weak inference of innocence from defendant's proffered test results, rejection of defendant's test results could not have affected the verdict and consequently is harmless error. *See State v. Gamez*, 144 Ariz. 178, 696 P.2d 1327 (1985) (conviction will not be reversed when it appears beyond a reasonable doubt that error did not influence verdict).

## Conclusion

We have searched the record for fundamental error pursuant to A.R.S. section 13–4035 and have found none. For the foregoing reasons, we affirm the judgment of the trial court. .

GARBARINO, J., concurs.

NOYES, Judge, dissenting.

I would reverse and remand. Because of the improper amendment of the indictment,

the remand would be for a finding of probable cause on the new charge.

Improper Amendment of the Indictment: An inmate found a .45–gram baggie of cocaine in Appellant's car. The indictment read: "On or about January 15, 1992, Greg Manuel Olea did knowingly possess or use a narcotic drug, to wit: .45 grams of cocaine...." In response to a pre-trial motion from Appellant, the State elected to proceed on a theory of "use." There was no discussion about the .45 grams. As later became apparent, the State assumed that the reference to .45 grams was stricken from the indictment, and Appellant assumed it was still there.

When the trial court raised the issue during jury selection, the State moved to strike the reference to the .45 grams, making explicit for the first time its intention to try Appellant for use of whatever cocaine produced the positive urinalysis. (An explanation for this tactic is found in final argument, when the prosecutor told the jury that if the only evidence was the baggie, "perhaps you could acquit the defendant for possession. Perhaps that case would not have ever been filed because it is real hard to prove who had access to that vehicle.")

Everyone agrees that the grand jury indicted Appellant for possession or use of the .45–gram baggie. The trial court saw that the proposed day-of-trial amendment was material, not technical, and decided not to let the State do it. But the court eventually allowed the amendment. Appellant made timely objection to the process by which the grand jury's indictment for possession or use of a .45–gram baggie of cocaine developed into a trial on the prosecutor's accusation that Appellant had used whatever cocaine produced a positive urinalysis. Appellant was entitled to a timely and formal accusation of the new charge, and to a probable cause determination regarding it. That he received neither of these formalities was a fundamental defect that violated due process and Rule 13.5(b), Arizona Rules of Criminal Procedure ("The ... indictment limits the

trial to the specific charge or charges stated in the ... indictment.").

That both the old and the new charge involved the same kind of drug should not obscure the fact that Appellant was indicted on one specific charge (possession or use of the .45–gram baggie of cocaine found in his car), then tried over his objection on a completely different specific charge (use of whatever cocaine produced the positive urinalysis). The amendment should not have been allowed over objection.

The State's right to amend an indictment "to conform to the evidence is subject to limitations to protect a defendant's constitutional rights." *State v. Delgado*, 174 Ariz. 252, 255, 848 P.2d 337, 340 (App.1993). An indictment represents the findings of a grand jury, and the trial court may not amend it to charge new and different substantive matters without the concurrence of the grand jury. *See State v. Fogel*, 16 Ariz.App. 246, 250, 492 P.2d 742, 746 (1972) (citations omitted); *see also State v. Rybolt*, 133 Ariz. 276, 280, 650 P.2d 1258, 1262 (App.1982), *overruled on other grounds by State v. Diaz*, 142 Ariz. 119, 120, 688 P.2d 1011, 1012 (1984) (citations omitted).

Erroneous Jury Instruction: Appellant's urine sample contained 189 nanograms of cocaine metabolite per milliliter. A nanogram is one billionth of a gram. The State's expert testified that a reading above 150 nanograms is regarded in the drug-testing industry as positive for cocaine, but that is all the reading means—it says nothing about how much cocaine was ingested, or when. The State produced no evidence that the metabolite in Appellant's urine was the by-product of a usable amount of cocaine. None of the State's experts was asked whether it takes a usable amount of cocaine to produce a positive urinalysis.

The crime of possession of a drug requires proof that the defendant knowingly possessed a usable amount of the drug. *State v. Murphy*, 117 Ariz. 57, 62, 570 P.2d 1070, 1075 (1977); *State v. Payan*, 15 Ariz.App. 128, 129, 486 P.2d 808, 809 (1971) (citing *State v. Mor-*

*eno*, 92 Ariz. 116, 120, 374 P.2d 872, 875 (1962)). The court advised counsel that it would include a usable amount element in the jury instructions. The court also proposed to give the standard definition that, "an amount is usable if it is of such quality and quantity that it can be used according to the practices of narcotics users." *See RAJI (Criminal)* § 34.081 (1989); *cf. State v. Quinones*, 105 Ariz. 380, 382 n. 3, 465 P.2d 360, 362 n. 3 (1970) (amount of drug usable if of quality and quantity that it can be used as a narcotic).

But the State argued, and the trial court eventually agreed, that one could not use less than a usable amount, and it would therefore be redundant to include a usable amount element and definition in the instructions. This argument is appealing, but circular. To say, "He used it, therefore it was a usable amount," is to begin and end with the conclusion that only a usable amount of cocaine produces a positive urinalysis. Perhaps this conclusion is valid, but we have no basis for taking judicial notice of it, and there was nothing presented in this trial to prove it. The State offered no evidence to associate 189 nanograms of metabolite with a usable amount of cocaine, the trial court offered no instruction on usable amount, and the Appellant made sufficient objection to both of these omissions.

Respectfully, I think we err in concluding that the crime of use is more absolute than the crime of possession. The relevant statute is A.R.S. section 13–3408(A)(1), which provides: "A person shall not knowingly: 1. Possess or use a narcotic drug." There is no reason to construe this simple statute to require a usable amount of cocaine for possession, but not for use.

If the legislature intended metabolite to be enough for a use conviction, it would likely have used in the drug code the same language it used in the motor vehicle code. A.R.S. section 28–692(A)(3) makes it unlawful—a misdemeanor—to drive a vehicle "while there is any drug ... or its metabolite in the person's body." The absence of meta-

bolite language in the statute that makes it a felony to knowingly possess or use cocaine is another reason why, in a prosecution for use of cocaine, the State has to prove more than metabolite in the person's body; it has to prove that the person knowingly used a usable amount of cocaine. The usable amount element might be easy to prove, but it is as essential in a use case as in a possession case.