781 P.2d 47

**STATE of Arizona, Appellee,**

v.

**Julian TORRES, Appellant.**

**No. 1 CA–CR 88–342.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 28, 1989.

As Corrected Oct. 19, 1989.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhauser, Chief Counsel, Crim. Div., and Susanna C. Pineda, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

A jury convicted Julian Torres of possession of a narcotic drug, and the trial court placed him on four years' probation. On appeal, the defendant asserts the following claims of error:

(1) The trial court improperly admitted evidence of a prior bad act;

(2) The prosecutor commented on the defendant's post-arrest silence;

(3) Defense counsel was ineffective because he failed to object to the prosecutor's comments on the defendant's post-arrest silence; and

(4) The trial court should have given an instruction based on *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964), concerning the failure of the police to lift fingerprints from the physical evidence.

Because we find that the trial court erred in admitting evidence of the defendant's prior drug use, we reverse and remand for a new trial. We consider the remaining issues should they arise again.

## THE FACTS

Acting on information regarding possible drug sales, Phoenix police were observing a parking lot when they saw the defendant get into a suspected drug dealer's car. As an undercover officer approached the driver's side of the car, he observed the defendant hand the driver some money and the driver hand the defendant a small item. When the defendant realized the officer was approaching the car, he took the money from the driver, threw it on the floor of the car, got out and ran. He ran by a second undercover officer, Detective Rocky Franklin, who said he observed the defendant's right hand in a clenched position. Detective Franklin chased the defendant, who, according to the detective, made a throwing motion with his clenched right hand and then continued to run with his fist unclenched. After he caught the defendant, Detective Franklin returned to the area where the defendant made the throwing motion and found a small amount of heroin wrapped in a cellophane wrapper.

After ascertaining that the defendant had been advised of his *Miranda* rights, Detective Franklin questioned him. The defendant denied possession of the heroin found on the parking lot, and he told Franklin he ran because he was wanted on outstanding traffic warrants.

## PRIOR DRUG USE

According to Detective Franklin, after the defendant was arrested he was asked if he used heroin, and he replied that he had used it in the past but was not presently doing so. Before trial, the defense moved to preclude admission of this statement, arguing that it was irrelevant and prejudicial. At this point in time, the probable nature of the defense Torres would raise had surfaced during the course of the hearing on the voluntariness of his statements. The trial court, without any direct inquiry into the nature of the defense and without any ostensible weighing of relevance against prejudice, denied this motion, finding the evidence relevant to show that the defendant "knew what he was dealing." At trial, Detective Franklin testified that the defendant had admitted using heroin in the past. The defendant testified that he told Franklin that he had used other drugs in the past, mostly marijuana, but not heroin.

■ Evidence of a person's past crimes or acts is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. Rule 404(b), Arizona Rules of Evidence, 17A A.R.S. However, this rule is "engrafted with well-recognized exceptions." *State v. Mosley*, 119 Ariz. 393, 399, 581 P.2d 238, 244 (1978). The state argues that under Rule 404(b), Arizona Rules of Evidence, evidence of prior bad acts or crimes is admissible in this instance to show proof of motive, knowledge, intent, and absence of mistake or accident.

■ The problem with the state's argument is the nature of the defense that Torres presented. He insisted that the heroin was not his, that he did not throw it, and that the officers planted the heroin

they said they found in the parking lot. There is simply nothing in the case which brings into play any issue of motive, knowledge, intent, absence of mistake, or accident. The evidence of prior use of heroin was relevant for only one purpose—to show that because the defendant had once at some unspecified time in the past used heroin, he must have been in the car for the purpose of purchasing the drug on this occasion. This is precisely what Rule 404(b) forbids. Perhaps the trial judge was not fully aware of the defense Torres would raise when he ruled that this evidence could be admitted, but once the matter was put in issue, an inquiry sufficient to make an informed ruling was necessary.

In a case very like this one, Division Two of this court succinctly explained the law on this subject. In *State v. Ramirez Enriquez*, 153 Ariz. 431, 737 P.2d 407 (App. 1987), the defendant was charged with selling marijuana. He denied that any sale had occurred. Evidence of the defendant's reputation as a drug dealer, and of other sales he had made, was admitted in evidence. The state argued that this evidence was necessary to "complete the story of the crime," but the trial judge apparently allowed it under Rule 404(b) to prove a common scheme or plan. In commenting on this ruling, Judge Livermore, speaking for Division Two, said:

> The question under Rule 404(b) is not whether evidence tends to establish guilt but how it tends to establish it. *If it tends to show a disposition toward criminality from which guilt on this occasion is to be inferred, it is inadmissible.* If it establishes guilt in some other way, it is admissible.

153 Ariz. at 432, 737 P.2d at 408 (emphasis added).

The court went on to say that the common plan exception "permits proof of [the defendant's] commitment to a particular plan of which the charged crime is a part" and held admission of evidence of other sales required reversal. *Id.* at 433, 737 P.2d at 409. Tracking Judge Livermore's expression of the rule, we repeat, the only relevance the evidence of prior drug use had in the case before us was the forbidden inference that because the defendant had used heroin in the past, he was using it now.

We examine the four Arizona cases we have found, which, in our opinion, most strongly support the argument that it was not an abuse of discretion to admit this testimony. Before we do, we observe that there is another problem with the admission of this evidence which bears on our discussion of these cases. Before admitting evidence of prior crimes, the trial court must weigh the probative value of the evidence against any possible prejudice to the defendant. *State v. Taylor*, 9 Ariz.App. 290, 293, 451 P.2d 648, 651 (1969). In arriving at this decision, a number of considerations must be taken into account. Included among them is the interval of time that has elapsed between the earlier crime or bad act and the one for which the defendant is on trial. Here, the defendant admitted using marijuana about three years before he was arrested. Officer Franklin testified that the defendant told him he had used heroin at one time but was not presently doing so. There was no evidence concerning *when* this prior heroin use occurred. The specificity necessary to establish relevance was lacking. We turn now to our consideration of the cases the state might have cited—though it did not do so—to suggest a contrary conclusion.

In *State v. Tisnado*, 105 Ariz. 23, 458 P.2d 957 (1969), the defendant was arrested with a sizeable quantity of marijuana and some heroin in his apartment. He claimed that unknown to him and against his will, a police informant had brought the contraband into his apartment. Evidence that the defendant had previously sold narcotics on several occasions was held admissible because it demonstrated that the defendant had the criminal intent he disavowed. The *Tisnado* court relied heavily on an earlier entrapment case that allowed evidence of prior similar offenses to disprove the defendant's claim that he was not predisposed to commit the offense. Since Tisnado's claim was not entrapment, the decision in *Tisnado* appears to hinge on a leap in

logic that might not survive re-examination. But there is something more to *Tisnado* that tends to explain it and distinguish it from the case before us. Without elaborating, the court in *Tisnado* described the questioned evidence as "evidence tending to show that he had possessed and sold narcotics on several occasions *prior to the day* on which he was charged with possession of narcotics." *Id.* at 25, 458 P.2d at 959 (emphasis added). Although somewhat vague, that description suggests that the several sales and the possession occurred reasonably close together in time. If they did, the entrapment analogy is strengthened because the defendant appeared to be engaged in a pattern of conduct that suggested predisposition. Perhaps the court confused predisposition and the kind of knowledge Tisnado claimed he lacked. In any event, there is nothing in the case before us to suggest the proximity in time between drug usage and the events that gave rise to Torres' arrest that would justify the application of *Tisnado* to this case.

In *State v. Mosley*, 119 Ariz. 393, 581 P.2d 238 (1978), evidence of track marks on the defendant's arms was admitted to show the defendant had knowledge of, and intended to possess the drugs that were found on the floor of a car in which the defendant was riding as a passenger. There was evidence from the appearance of the track marks that the defendant had frequently injected drugs over a period of time ranging from several years to six months prior to the trial date. If this were true, the defendant might well have been a user at the time he was arrested. Presumably, the frequency of use and the proximity in time of drug use and the possession for which the defendant was arrested were critical to the opinion.

In *State v. Hines*, 130 Ariz. 68, 633 P.2d 1384 (1981), the defendant was charged with possessing marijuana which had been found in a match box in the pocket of his pants. The defendant claimed that the marijuana belonged to his girlfriend, who had worn his pants the day before his arrest. Evidence was admitted that on the occasion of an earlier arrest of the defendant, the police found fifty-five match boxes of marijuana in his bedroom. The supreme court ruled without elaboration that it was not error to admit this evidence because the defendant's knowledge and intent were in issue. We believe the case necessarily turns on the distinctive packaging of the marijuana, which was arguably relevant to the issues of knowledge and intent.

In *State v. Sullivan*, 130 Ariz. 213, 635 P.2d 501 (1981), over a strong dissent by Justice Gordon, the supreme court approved the admission of evidence that the defendant had a prior conviction for possession of a narcotic drug. The court observed that the evidence had been admitted to impeach the defendant's testimony that he did not know cocaine was going to be sold on the occasion when he was arrested in a restaurant parking lot. On that occasion, the defendant had handed a narcotics agent, who asked to see the "stuff," a plastic bag containing a white powder. The court said that from the prior conviction the jury could infer that the defendant was familiar with narcotic transactions and knew that a sale was taking place. By contrast, in the case before us the question is what did the defendant do, not what did he know. Lack of knowledge and lack of intent are simply not the defenses the defendant interposed to this charge.

■ Having found error, we will reverse unless we can say beyond a reasonable doubt that the admission of the evidence had no effect on the jury's verdict. *State v. Gamez*, 144 Ariz. 178, 180, 696 P.2d 1327, 1329 (1985). While the state's case against the defendant was strong, we cannot say beyond a reasonable doubt that the jury would have arrived at the same verdict had they not heard evidence of the defendant's prior drug use. The defendant's argument was essentially that he did not have possession of the drugs. Detective Franklin's testimony that the defendant had been a heroin user, the very drug the defendant was charged with possessing, must have been especially damaging to the defendant's case.

## COMMENT ON
## POST–ARREST SILENCE

Detective Franklin testified that suspects sometimes run from the police because they have arrest warrants outstanding. He conceded that he may have learned of the existence of traffic warrants and said he was not sure how and when he learned this information. He was clear that immediately after the arrest, the defendant said nothing about outstanding warrants. He conceded that he may have learned this information from the defendant later.

During closing, the prosecutor argued:

Torres was omitting critical things. Number one, Torres told you that he had borrowed some money from [the driver] and was repaying it. That's number one. Number two, when he saw [the police] he ran because he had these outstanding warrants, traffic warrants....

\* \* \* \* \* \*

We found out from [Detective] Franklin, A, he never told Franklin that the reason he ran was because he was afraid that somebody, some police officer would catch him because of his outstanding warrants. Now, if that was the real reason he had run, when he talks to the detective right away, if he was sincere about that, wouldn't he have told the detective that 'Hey, look, you know, you got me, but let me explain something. The only reason I ran, because I had these outstanding warrants, and I didn't want to get caught on the traffic warrants?' But it doesn't happen that way. See, the traffic warrants don't come up until the time the arrest sheet is made out, and Rocky Franklin isn't sure whether the defendant told them or they found out on their own. Then the defendant comes on the stand and says, 'Oh, yeah, the reason why I ran—' Is that the reason why he ran? No. If it had been the reason why he ran, I am sure he would have told [Detective] Franklin.

The defendant contends that this constituted an improper reference to the defendant's right to remain silent. Citing *Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), which in turn relies on

*Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the defendant argues that the prosecutor's comments mandate reversal. We disagree.

In *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the United States Supreme Court held that after a defendant takes the stand and offers an exculpatory version of his actions, it does not "violate[ ] due process of law for a state to permit cross-examination as to postarrest silence...." This type of cross-examination is proper impeachment.

■ The Court in *Fletcher* noted that *Doyle* is "a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him." 455 U.S. at 606, 102 S.Ct. at 1311, 71 L.Ed.2d at 494. That is not the situation here. The defendant introduced evidence of his outstanding arrest warrants as an excuse for running from police officers. Detective Franklin testified that the defendant was read his *Miranda* rights, did not invoke his right to silence, and did not immediately offer this excuse. It was not improper for the prosecutor to remark on this fact during closing argument. *See also State v. Tuzon*, 118 Ariz. 205, 207, 575 P.2d 1231, 1233 (1978); *State v. Raffaele*, 113 Ariz. 259, 263, 550 P.2d 1060, 1064 (1976). This conclusion also disposes of the defendant's argument that his counsel was ineffective in failing to object to the prosecutor's comments.

## LOSS OF EVIDENCE

The defendant claims that, because the state failed to test the heroin packet for fingerprints and that evidence could have eliminated him as a suspect, the loss was material to his defense and was a denial of due process requiring reversal and dismissal of the charges. In the alternative, he argues that the trial court erred when it denied his request for a *Willits* instruction.

■ The defendant's premise is flawed. The absence of fingerprints on the packet of heroin would not eliminate him as a suspect. While he would be free to argue that if his prints were not on the packet he

had never touched it, a finder of fact would be under no compulsion to accept that conclusion. We turn to a discussion of the other facets of the defendant's argument on this issue.

Detective Franklin testified that he did not submit this packet of heroin for fingerprint analysis because, while it might be possible to do so, he had never recovered prints from this type of material in the past. He testified that the heroin could have been contaminated or destroyed in an attempt to lift prints from the cellophane packaging. Although he took no precautions in handling the cellophane to preserve prints, he testified that he did not intentionally destroy any fingerprints on it.

■ Viewed in one way, the police simply chose not to collect fingerprints from the cellophane packaging. Police generally have no duty to seek out and obtain potentially exculpatory evidence. *State v. Rivera*, 152 Ariz. 507, 511, 733 P.2d 1090, 1094 (1987). There was no due process violation here.

■ We turn to a consideration of whether the way the police handled the cellophane amounts to a failure to preserve potentially useful evidence. Assuming that it did, the United States Supreme Court has held that a defendant is not deprived of constitutional due process entitling him to dismissal of the charge unless he can show bad faith on the part of the police. *Arizona v. Youngblood*, 488 U.S. 51, ——, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988). However, "[e]ven in situations where the defendant cannot show bad faith on the part of the state in failing to preserve material evidence, the defendant may nevertheless be entitled to a dismissal if he can make a sufficient showing of substantial prejudice." *State v. Gerhardt*, 161 Ariz. 410, 412–13, 778 P.2d 1306, 1308–09 (Ct.App.1989). The trial court made no finding of bad faith in this case, and we see no reason to do so either. Nor is the defendant able to show substantial prejudice. As we have already observed, absence of the defendant's prints on a carefully handled packet is, at best, suggestive, not conclusive.

If that were not enough, there is some support in this record that no evidence was lost at all. Detective Franklin, in response to cross-examination by defendant's counsel, testified that he understood that techniques exist to remove prints underneath other prints. If this is true, the defendant could have subjected the packet to fingerprint analysis had he chosen to do so without prejudice from Franklin's handling of the packet.

■ Defendant argues that the trial court committed reversible error by failing to give a requested *Willits* instruction because the state was responsible for the destruction of potential fingerprints on the heroin packet, and that had the instruction been given, he might have been acquitted. "To be entitled to a *Willits* instruction, a defendant must prove that (1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice." *State v. Smith*, 158 Ariz. 222, 227, 762 P.2d 509, 514 (1988). Whether either showing has been made is a question for the trial court; its decision to forego a *Willits* instruction for failure to satisfy either or both of the above requirements will not be reversed absent an abuse of discretion. *State v. Reffitt*, 145 Ariz. 452, 461, 702 P.2d 681, 690 (1985).

■ The defendant has failed to show the existence of material and reasonably accessible exonerating evidence. There was no showing that usable prints that could have been lifted from the heroin packet were destroyed by the way the police handled the evidence. The defendant could have, but did not, try to fingerprint the packet himself. Nor do we believe that proof of the absence of defendant's prints would have materially aided his defense. The packaging medium was a poor one for obtaining prints. As we have twice already observed, had prints been sought, failure to obtain defendant's prints would not have proved his innocence. We therefore find no abuse of discretion in the trial court's refusal to give a *Willits* instruction.

The sentence and conviction are reversed, and the case remanded for further proceedings consistent with this opinion.

GRANT, C.J., and FIDEL, J., concur.