986 P.2d 222

**STATE of Arizona, Appellee,**

v.

**Thomas VIGIL, Appellant.**

**No. 1CA–CR 97–0843.**

Court of Appeals of Arizona, Division 1, Department A.

Feb. 2, 1999.

Review Denied Sept. 21, 1999.

Janet Napolitano, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Galen H. Wilkes, Assistant Attorney General Attorneys, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender Attorneys, Phoenix, for Appellant.

### OPINION

GERBER, Judge.

¶ 1 Appellant Thomas Vigil (defendant) appeals his conviction and sentence for drive-by shooting, a class 2 dangerous felony. The issue before us is whether the admission of two prior bad acts, under Arizona Rules of Evidence 404(b), constitutes reversible error.

### FACTS

¶ 2 We review the facts in the light most favorable to sustaining the jury's verdict. *See State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992). The defendant and Jessica Ronquillo (Ronquillo) lived in the same neighborhood. They had known each other since 1994. At that time, Ronquillo was seeing Carlos Luna and became pregnant with his child during that year. In February 1995, Ronquillo and Luna broke up. The following month Ronquillo began a relationship with the defendant. The birth of Ronquillo and Luna's daughter resulted in the rekindling of the Ronquillo and Luna relationship and she thus sought to end her relationship with the defendant. During the time of her relationship with the defendant, Ronquillo lived with her mother.

¶ 3 On September 15, 1995, at approximately 1:00 a.m., the defendant went to the Ronquillo residence and began calling for Ronquillo to come outside. When she did not, he took a log or rock from the front yard and threw it through a window. He left the scene in a white Chrysler LeBaron. Ronquillo's mother called the police and later obtained an order of protection against him, which was served on September 18, 1995. The defendant at trial admitted that he broke the window but claimed he did so accidentally with a rock, not a log.[1] He denied ever owning a Chrysler LeBaron.

¶ 4 Around midnight on September 22, 1995, aware of the order of protection against him, the defendant returned to Ronquillo's home, where Ronquillo was sitting on the front porch with her friend, Bodelio Macias (Macias). The defendant requested that Ronquillo approach his car, but she asked him to leave. Before the defendant had a chance to leave, Ronquillo's mother and her husband Richard Chavez (Chavez) arrived. The defendant left promptly, drove away, turned around, and drove back. When he returned, Ronquillo, her mother, and Chavez were standing in the driveway. The defendant slowed down and allegedly shot a gun at them once or twice from a distance of approximately 30 feet.

¶ 5 Ronquillo and her mother testified that they saw sparks coming from the defendant's car. Neither saw a gun. Ronquillo further testified that she heard the bullets hit her mother's house. No bullets, shell casings or impact markings were found. Both women claimed the defendant was the only person in the car.

¶ 6 Ronquillo's mother called the police, who arrived about an hour after the incident. The police report indicates no damage to any residence or to the vehicle in the driveway.

¶ 7 The defendant admitted that he drove by the Ronquillo residence on September 22 and saw Ronquillo and Macias on the porch. He also admitted that he talked with Ronquillo.[2] He denied shooting at Ronquillo, her friend's party on September 22. He also named five witnesses who would attest that he was with them until 5:00 a.m. on September 23.

---

1. The police report documenting the incident describes the object as a "large round rock," per Ronquillo's description.

2. During sentencing, the defendant recanted this part of his testimony. He filed an affidavit that alleged, *inter alia,* that he was actually at a

mother and stepfather, and denied owning a gun. He testified that he was served with a restraining order on or around September 18, 1995. He admitted that he continued to see Ronquillo in spite of the order of protection and claimed that she continued to initiate calls to him frequently.

¶ 8   On September 28, 1995, Ronquillo's mother telephoned the police to follow up on their investigation prompted by her prior call. She spoke with Herbert Bolvin (Bolvin), an investigator with the assault unit of the Phoenix Police Department. Their conversation was tape recorded. During that conversation, the detective stated that he then lacked sufficient evidence for prosecution. After a 15–minute conversation, Ronquillo's mother, contrary to her earlier statement, assured him that she had seen the defendant's gun. Bolvin then decided to charge the case.

¶ 9   On October 12, 1995, the defendant drove several times by Luna's mother's home where Ronquillo and Luna were living together. On his final drive-by, near noon, he threw a beer can at Luna's cousin's car parked outside the home. The incident was reported to the police by Luna and his cousin, who were eyewitnesses, and by Ronquillo. The defendant testified that, though he was driving the car, it was his nephew who threw the beer can.

¶ 10   The defendant was convicted of drive-by shooting, a class 2 dangerous felony, and sentenced to a mitigated sentence of 14 years. He filed a timely notice of appeal with this court.

## PROCEDURAL HISTORY

¶ 11   Prior to trial, the prosecution filed a motion seeking to introduce at trial five of the defendant's other acts. The court instead limited the information allowed under Rule 404(b) to testimony regarding two specific incidents reported to the police, the first being the throwing of a log or rock through Ronquillo's window and the second, the throwing of the beer can.

---

**3.** During the hearing on Rule 404(b), the prosecutor argued, on four separate occasions, for the admission of evidence to show a continuous pat-

¶ 12   The trial court ruled that it would not permit the prosecution to present evidence, as it wished, regarding the defendant's "general pattern of harassment," but indicated that it would allow testimony about the two throwing incidents to show "motive" and "identity," which were not the primary reasons urged by the prosecution.[3]   The court further indicated that it would admit the two incidents because they were "reported to the police."

## STANDARD OF REVIEW

¶ 13   We review a trial court's admission of evidence of bad acts for an abuse of discretion. *See State v. Dickens*, 187 Ariz. 1, 18, 926 P.2d 468, 485 (1996); *Old Chief v. United States*, 519 U.S. 172, 183–84, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997).

## ANALYSIS

¶ 14   The defendant's main argument is that the trial court erred by allowing the state to introduce evidence of his other bad acts. Before admitting such evidence, the trial court must conclude that (1) the state has proved by clear and convincing evidence that the defendant committed the alleged prior act; (2) the state is offering the evidence for a proper purpose; and (3) its probative value is not outweighed by the potential for unfair prejudice. *See State v. Terrazas*, 189 Ariz. 580, 583–84, 944 P.2d 1194, 1197–98 (1997); *State v. Mott*, 187 Ariz. 536, 545, 931 P.2d 1046, 1055 (1997); Ariz. R. Evid. 104(b), 401, 402, 403, 404(b).

### A.   Trial Court's Conclusions

**Did the state prove that the defendant committed the other bad acts?**

¶ 15   The Arizona Supreme Court held in *Terrazas* that, before a trial court may admit evidence of prior bad acts, it "must find that there is clear and convincing proof both as to the commission of the other bad act and that the defendant committed the act." 189 Ariz. at 584, 944 P.2d at 1198. *Terrazas* expressed

---

tern of harassment. By contrast, he mentioned "motive and intent" only once in the same discussion. He did not mention identity.

concern for unfair prejudice generated when bad act evidence is admitted:

> [The trial court] must ensure that the evidence against the defendant directly establishe[d] "that the defendant took part in the collateral act, and ... shield the accused from prejudicial evidence based upon 'highly circumstantial inferences.' "

189 Ariz. at 584, 944 P.2d at 1198 quoting Vivian M. Rodriguez, *The Admissibility of Other Crimes, Wrongs or Acts Under the Intent Provision of Federal Rules of Evidence 404(B): The Weighing of Incremental Probity and Unfair Prejudice*, 48 U. Miami L.Rev. 451, 457 (1993)).

¶ 16   In ruling on the 404(b) motion, the trial court, on this silent record, apparently did not apply the clear and convincing standard or indeed any standard to determine the admissibility of the other bad acts apart from the fact they were "reported to the police." The failure to do so violates the *Terrazas* requirement.

**Did the state offer the evidence for the proper purpose?**

¶ 17   Arizona Evidence Rule 404(b) provides as follows:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶ 18   The state's initial notice of intent to use the defendant's other crimes, wrongs or acts mirrored the language of Rule 404(b). However, in its argument for the admission of other act evidence, the prosecution repeatedly stressed that the other acts would be used to show the defendant's "continuing pattern of harassment." The court refused to admit the evidence for this purpose. Instead, on its own initiative, it admitted the evidence to prove "identity" and "motive," neither of which was at issue.

¶ 19   Identity was not an issue because Ronquillo and her mother had known the defendant for years. Ronquillo testified that immediately prior to the drive-by shooting, she spoke with the defendant for long enough to tell him to leave. Both she and her mother testified that they clearly saw him shoot at them.

¶ 20   On at least three occasions during his closing argument, the prosecutor himself said that identity was not an issue:

> I mean, let's look at the facts. These people all know each other. A lot of times, as you heard Detective Bolvin testify, identity is an issue in a case. It's not an issue here because we have people who are well acquainted with one another.

¶ 21   Motive, also, was not an issue. In closing argument, the prosecutor stated:

> And you will notice here that we don't ever have to know and we don't ever have to prove, and we never asked what the Defendant's motive is. It's not part of the charge. It's not part of the elements.

¶ 22   In spite of the fact that the trial court admitted the other act evidence only to prove identity and motive, those were not the reasons the prosecution urged and, as noted above, were reasons expressly disavowed by the prosecution.

¶ 23   Evidence of other conduct is generally inadmissible. Ariz. R. Evid. 404(a). Other act evidence is only admissible if offered for a proper purpose such as one of the exceptions enumerated in Rule 404(b). *See State v. Garland*, 191 Ariz. 213, 217, 953 P.2d 1266, 1270 (App.1998). Evidence that goes to show a "pattern" of specific conduct is not one of the exceptions identified under Rule 404(b). Among the purposes for which other act evidence is permitted, the one most closely resembling a pattern is a "common scheme or plan."

¶ 24   The Arizona Supreme Court addressed the issue of a "common scheme or plan" most recently in *State v. Ives*, 187 Ariz. 102, 106, 927 P.2d 762, 766 (1996). There the Court found that in order to prove a common scheme or plan, the state must demonstrate that the other act is part of "a particular plan of which the charged crime is a part." *Id.* (quoting *State v. Ramirez Enriquez*, 153 Ariz. 431, 433, 737 P.2d 407, 409 (App.1987) (defining "common scheme or plan" in the

context of Rule 404(b), Ariz. R. Evid.)); *see also State v. Torres,* 162 Ariz. 70, 73, 781 P.2d 47, 50 (App.1989). The court explicitly adopted a narrow definition:

> Because the instant case squarely presents the issues, and because there is a clear conflict in the case law, we now decide that the narrower definition of "common scheme or plan" as described in *Ramirez Enriquez* is the better and proper definition and adopt it for use in all cases in which convictions have not become final (on direct appeal or by expiration of time for direct appeal) as of the date of filing this opinion.

*Ives,* 187 Ariz. at 107, 927 P.2d at 767.

¶ 25 The "pattern" argued by the prosecution does not fit the narrow definition in *Ives.* Furthermore, the testimony of Ronquillo and her mother about the defendant's other bad acts suggested that because the defendant had twice allegedly harassed the victim, he must have also committed the drive-by shooting. *See Torres,* 162 Ariz. at 73, 781 P.2d at 53. Rather than identity or motive, the other act evidence seems to have been intended to prove the defendant's propensity for criminal behavior similar to the crime charged. Toward the end of his closing argument, the prosecutor said:

> I think it's fair to tell you that that shows that we have a person that has a certain amount of disrespect for the system and a certain amount of disrespect for the law. But I think you can tell from everything else you have heard, and I think you will know, that when you talk about a legal document, an injunction preventing harassment being served on him and he told you he knew it was in place and it didn't stop him from doing anything.

Evidence to demonstrate conduct "in conformity therewith" is forbidden by Rule 404(b). We conclude that the reasons stated by the trial judge and the prosecutor do not permit the prior bad act evidence.

**Was the probative value substantially outweighed by the danger of unfair prejudice?**

¶ 26 In *Ives* the Arizona Supreme Court also held that, even if the 404(b) exception is applied correctly, the trial court must still conduct an inquiry under Rule 403 to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice:

> [W]e remind counsel and trial courts in future cases that the inquiry is not complete when a finding on Rule 404(b) admissibility is made. The rules of evidence are designed to provide fair trials, and trial judges should not treat Rule 403 as an empty promise. There will be situations in which evidence sought to be introduced is more prejudicial than probative, and those situations are very likely to arise in the prior bad act context. When called upon to weigh probative value against unfair prejudice under Rule 403, a trial judge must assure [that] the state is not permitted to prove a defendant's guilt of one act through excessively prejudicial evidence of other acts.

187 Ariz. at 111, 927 P.2d at 771; *See also Old Chief v. United States,* 519 U.S. at 180–82, 117 S.Ct. 644. Evidence is unduly prejudicial if it has a tendency to suggest decision on an improper basis, such as emotion, sympathy or horror. *See Mott,* 187 Ariz. at 545, 931 P.2d at 1055; *State v. Schurz,* 176 Ariz. 46, 52, 859 P.2d 156, 162 (1993).

¶ 27 Here, the trial judge did not conduct any Rule 403 inquiry to determine whether the admission of the other act evidence would be unduly prejudicial to the defendant or whether its probative value outweighed its prejudicial impact. Failure to do this weighing exercise violates the *Ives* standard.

### B. Harmless Error Analysis

¶ 28 Given these three errors, we must now decide whether they warrant a reversal of this conviction.

¶ 29 The defendant admitted that he drove to the Ronquillo home close to midnight on September 22 but denied having shot at anyone. The defendant and Ronquillo both testified that Ronquillo's mother strongly disapproved of their relationship because of the age difference between them and wanted their relationship to end. She evicted Ronquillo from her house when she

realized that she was still seeing the defendant. She obtained the order of protection and twice called the police to report his violations. In her taped conversation with Bolvin, when the detective expressed concern over the paucity of evidence, she indicated that she actually saw the defendant's gun during the drive-by, a detail that she had denied both at the scene and later at trial.

¶ 30 Prior to sentencing, the defendant filed an affidavit in which he alleged, *inter alia*, that Ronquillo had visited him in prison and confessed to committing perjury at trial, telling him that she felt sorry for what she had done and that she had been drunk. Ronquillo sent a letter to the judge before sentencing asking for leniency and asserting that the defendant should serve "no more than two years with six to twelve months mandatory counseling." While Ronquillo's letter did not absolve the defendant, the judge deemed it significant enough to mitigate the sentence.[4]

¶ 31 There was no physical evidence introduced to corroborate the testimony of Ronquillo and her mother that any shooting had occurred. No shell casings or strike marks were found at the scene, despite Ronquillo's claim that she heard the bullets hit the brick of her house. The prosecution presented no testimony from disinterested witnesses; the only eyewitnesses to testify for the prosecution were Ronquillo and her mother. Chavez, who was supposedly in the driveway at the time of the alleged shooting, was originally scheduled to testify but did not appear. He had "no comment" for the presentence report and, surprisingly, "no reaction" to the police after the alleged shooting. No other witnesses came out of their homes to talk to the police to say they had heard the shots. Macias, who was either on the porch or inside the home when the supposed shots were fired, also refused to testify. Ronquillo's two younger sisters who were inside the house at the time of the alleged shooting neither spoke to the police nor testified at trial.

4. Ronquillo's mother, though scheduled to appear, did not attend the defendant's aggrava-

¶ 32 In light of this state of the evidence, coupled with the three errors concerning the evidence of prior bad acts, we cannot say that the errors were harmless nor that, beyond a reasonable doubt, the jury would have convicted the defendant of the drive-by shooting if the challenged evidence had been excluded. *See State v. Grannis*, 183 Ariz. 52, 57 900 P.2d 1, 6 (1995); *State v. Charo*, 156 Ariz. 561, 563, 754 P.2d 288, 290 (1988). We do not reach the question whether any one of the three evidentiary errors alone would require this result.

## CONCLUSION

¶ 33 Given the errors and record described above, we must reverse the defendant's conviction and remand to the trial court for further proceedings consistent with this decision.

CONCURRING: NOEL FIDEL, Judge, and SARAH D. GRANT, Judge.

tion/mitigation hearing.