**NOTICE:  THIS DECISION DOES NOT CREATE LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED BY APPLICABLE RULES.** *See* Ariz. R. Supreme Court 111(c); ARCAP 28(c); Ariz. R. Crim. P. 31.24.

FILED BY CLERK

AUG 29 2012

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2011-0264 |
| Appellee, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| ROHAN LIVINGSTON BUTLER, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20073878

Honorable Howard Hantman, Judge

AFFIRMED

Thomas C. Horne, Arizona Attorney General
  By Kent E. Cattani, Joseph T. Maziarz,
    and Nicholas Klingerman                         Tucson
                                          Attorneys for Appellee

Lori J. Lefferts, Pima County Public Defender
  By Kristine Maish                                     Tucson
                                          Attorneys for Appellant

E C K E R S T R O M, Presiding Judge.

¶1        Following a jury trial, appellant Rohan Butler was convicted of conspiracy to possess or transport marijuana for sale, possession of marijuana for sale, and possession of a deadly weapon during a felony drug offense. The trial court sentenced Butler to concurrent prison terms, the longest of which were four years. On appeal, he argues the court erred in denying his *Batson* challenge,[1] admitting a document from an out-of-state sheriff's department, and denying his motion for a judgment of acquittal on the weapons charge. He also argues his conviction on the weapons charge is unconstitutionally duplicitous, even if it is supported by sufficient evidence. For the reasons set forth below, we affirm.

### Factual and Procedural Background

¶2        The evidence in this case, which we view in the light most favorable to upholding Butler's convictions, was previously discussed in our opinion regarding a codefendant with whom Butler was jointly tried. *See State v. Francis*, 224 Ariz. 369, ¶¶ 2-6, 231 P.3d 373, 374-75 (App. 2010). Butler initially came under police surveillance on September 19, 2006, when he drove a burgundy car into the garage of a house located on Calle Lado Al Rio. Approximately one hour later, Butler opened the garage door, drove the car to the street, parked it there, and went back inside the house. Some twenty minutes later, Butler's codefendants, Christopher Francis and Monica Guzman, arrived in a white car and went inside the house. Shortly thereafter, Butler drove away in his car with Francis and Guzman following him in their vehicle.

---

[1]*See Batson v. Kentucky*, 476 U.S. 79 (1986).

¶3        Police officers executed a search warrant at the house on Calle Lado Al Rio that same day and found it to be unoccupied and sparsely furnished. Although the house had "no furniture, no coffee tables, [and] no couches," one of the bedrooms contained a bed with a loaded nine-millimeter pistol resting upon it. The house also contained wooden crates, shipping boxes, packaging materials, a fifty-pound scale, marijuana, some ledgers, and a piece of cardboard with Francis's handwriting on it.

¶4        After Butler and his codefendants had departed from the house on Calle Lado Al Rio, they proceeded to another house located on Camino Laguna Seca. The codefendants left shortly after their arrival there, but Butler remained. When police officers knocked on the front door of the residence, Butler answered holding three cellular telephones. During his conversation at the door, other officers discovered two bales of marijuana behind a wall of the house. The officers detained Butler and obtained a search warrant for the house.

¶5        Inside the house at Camino Laguna Seca, officers found documents bearing Francis's and Guzman's names, photographs of Francis and Guzman, letters addressed to an individual at the Calle Lado Al Rio address, marijuana, ledgers, a digital scale, and packing materials. When officers asked Butler whether he could open the locked door to the master bedroom, Butler denied having a key to it, and the officers forced the door open. In the closet of the master bedroom they discovered a .40 caliber handgun and a .380 caliber handgun hidden inside a shoe box. A cellular telephone box within the closet contained nearly $13,000 in cash. The master bedroom also contained a drug ledger and shipping receipts bearing the Calle Lado Al Rio address.

¶6        In addition to searching the two houses, police officers also searched Butler's burgundy car. There, inside a suitcase, they discovered a property receipt from a Georgia sheriff's department indicating it had seized from Butler a shoe box containing a "large amount of U.S. currency" less than one week earlier. Officers also found a handwritten list of various guns and ammunition.

¶7        Butler was jointly tried with his two codefendants and convicted of three felony offenses, as noted above. This timely appeal followed the court's imposition of sentence.

### Sufficiency of the Evidence

¶8        Butler first argues there was "no evidence that [he] was or . . . had ever been in the bedroom" of the house on Camino Laguna Seca where the two handguns were found, "or that he had access to it." Similarly, he contends "there was no evidence or 'even an inference'" that he had seen the gun at the other house on Calle Lado Al Rio. He therefore argues the trial court erred in denying his motion, pursuant to Rule 20, Ariz. R. Crim. P., for a judgment of acquittal on the weapons misconduct charge pursuant to A.R.S. § 13-3102(A)(8).[2]

¶9        A motion for a judgment of acquittal under Rule 20 is designed to test the sufficiency of the evidence, *State v. Neal*, 143 Ariz. 93, 98, 692 P.2d 272, 277 (1984),

---

[2]Although the single count with which Butler was charged alleged he had possessed all three handguns recovered by police, Butler does not argue that proof he committed misconduct as to all three weapons was necessarily required. He does not dispute, in other words, that evidence showing he had possessed one of the handguns would be sufficient to sustain his conviction. Rather, Butler complains his indictment alleged multiple criminal acts, making the basis of the jury's verdict unclear, and we address this alleged duplicity error in a separate section of our decision.

4

and calls for a court to assess "whether the record contains 'substantial evidence to warrant a conviction.'" *State v. West*, 226 Ariz. 559, ¶ 14, 250 P.3d 1188, 1191 (2011), *quoting* Ariz. R. Crim. P. 20(a). When a Rule 20 motion is denied, a reviewing court must determine de novo whether sufficient evidence supports every element of the offense. *See West*, 226 Ariz. 559, ¶¶ 15-16, 250 P.3d at 1191. The test "'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* ¶ 16, *quoting State v. Mathers*, 165 Ariz. 64, 66, 796 P.2d 866, 868 (1990). The substantial evidence necessary to sustain a conviction may be circumstantial or direct. *Id.* If "'reasonable minds may differ on inferences drawn from the facts,'" the evidence is substantial and the conviction must be upheld. *Id.* ¶ 18, *quoting State v. Lee*, 189 Ariz. 590, 603, 944 P.2d 1204, 1217 (1997).

¶10 Section 13-3102(A)(8) proscribes knowingly "possessing a deadly weapon during the commission of any felony [drug] offense." Possession, as it is defined under this statute, may be either physical or constructive, but it requires proof the defendant knowingly exercised dominion or control over the weapon. *State v. Petrak*, 198 Ariz. 260, ¶ 11, 8 P.3d 1174, 1178 (App. 2000); *see* A.R.S. § 13-105(34), (35). Because the statute also specifies that possession must occur "during" the commission of a predicate drug crime, § 13-3102(A)(8), the state must prove, at minimum, that the defendant "could have used the weapon to further" the underlying drug offense. *Petrak*, 198 Ariz. 260, ¶ 19, 8 P.3d at 1180. "Factors tending to show that the weapon was or could be used in

5

this way . . . include the spatial proximity and accessibility of the weapon to the defendant and to the site of the drug offense." *Id.*

¶11　　　　Here, at the very least, the state presented sufficient evidence that Butler knew of and constructively possessed the nine-millimeter pistol found on the bed in the residence on Calle Lado Al Rio. Butler entered into the garage there, stayed at the house for nearly one hour, and then drove his car onto the street. After that, he reentered the house, where he had both a view of and access to the loaded firearm found on top of the bed. Marijuana was found inside the house, along with abundant evidence of marijuana trafficking. And the list in Butler's luggage further demonstrated his knowledge of firearms or use of them in his activities. The combined circumstantial evidence therefore supported an inference that Butler possessed a deadly weapon during the commission of a felony drug offense, even if reasonable minds could differ on the point. We do not reweigh the evidence on appeal when determining its sufficiency. *Lee*, 189 Ariz. at 603, 944 P.2d at 1217.

## Duplicity

¶12　　　　Butler further argues the weapons charge was a "duplicitous charge" because it alleged he had possessed "a 9mm pistol, a .40 caliber handgun, and a .380 caliber pistol." The state concedes a duplicity error exists because the indictment alleged in one count what could have been "three separate counts of weapons misconduct—one for each gun." Both parties maintain fundamental error review applies to this issue, because Butler failed to object or take any remedial measures below, but they dispute whether Butler has demonstrated prejudice on appeal. *See State v. Valverde*, 220 Ariz.

6

582, ¶ 12, 208 P.3d 233, 236 (2009) (under fundamental error review, "[t]he defendant bears the burden of proving both that the error was fundamental and that the error caused him prejudice"). We find no basis to disturb the verdict.

¶13 Preliminarily, we note Butler has mischaracterized this issue on appeal. A "duplicitous charge" is one that alleges multiple crimes due to the presentation of evidence at trial, whereas a "duplicitous indictment" is one that, on its face, alleges multiple crimes within one count. *State v. Paredes-Solano*, 223 Ariz. 284, ¶¶ 4-5, 222 P.3d 900, 903 (App. 2009).[3] Here, the indictment was duplicitous on its face, so we are concerned with a "duplicitous indictment" rather than a "duplicitous charge." This difference may seem merely technical, because both types of duplicity error present similar problems with respect to jury unanimity and pleading double jeopardy. *See State v. Klokic*, 219 Ariz. 241, ¶ 12, 196 P.3d 844, 847 (App. 2008). But the different duplicity errors are not identical with respect to providing notice to a defendant.

¶14 Because a duplicitous indictment alerts a defendant to the problem before trial, he or she may elect at that time to cure the issue through a pretrial motion, as specified in Rules 13.5(e) and 16.1(b), Ariz. R. Crim. P. *State v. Anderson*, 210 Ariz.

---

[3]A "duplicitous indictment" is, in some ways, a misnomer, because the adjective *duplicitous* actually applies to the charges within the document; duplicity within a single charge thus will render an indictment duplicitous. Nevertheless, because this is the technical nomenclature our courts have adopted, we adhere to it "to be precise in this confusing area of the law." *State v. Schroeder*, 167 Ariz. 47, 54, 804 P.2d 776, 783 (App. 1990) (Kleinschmidt, J., concurring).

327, ¶¶ 16-17, 111 P.3d 369, 377-78 (2005).[4] The defect marking a duplicitous indictment is, by definition, apparent from its text, meaning it might not deprive a defendant of the "fundamental right to reasonable notice of the criminal acts charged against him," *Spencer v. Superior Court*, 136 Ariz. 608, 610, 667 P.2d 1323, 1325 (1983), in the same manner as a duplicitous charge. *See, e.g.*, *State v. Hargrave*, 225 Ariz. 1, ¶¶ 27, 30-32, 234 P.3d 569, 579 (2010) (finding no basis for reversal when single armed robbery count named three separate victims).

¶15　　　　Our supreme court recently stated in *Hargrave* that a defendant who fails to challenge a duplicitous indictment before trial "waive[s] th[e] issue unless he can establish fundamental error." *Id.* ¶ 28. It is questionable whether the court intended this statement to constitute the appellate review standard applicable to all cases involving a duplicitous indictment where the error was not preserved below. *See State v. Martinez*, 210 Ariz. 578, n.2, 115 P.3d 618, 620 n.2 (2005) (observing failure to object does not technically "'waive'" claim but rather "forfeit[s] the right to obtain appellate relief unless . . . fundamental error occurred"); *see also Anderson*, 210 Ariz. 327, ¶¶ 14-18, 111 P.3d at 377-78 (emphasizing challenge to duplicitous indictment must be made in pretrial motion, and finding belated challenge to indictment "waived" and "'precluded'" because it deprived state opportunity to cure indictment and seek multiple penalties), *quoting* Ariz. R. Crim. P. 16.1(c). In any event, we may assume without deciding that

---

[4]A duplicitous charge, in contrast, may be timely objected to when the presentation of evidence first creates the problem. *Anderson*, 210 Ariz. 327, n.3, 111 P.3d at 378 n.3; *accord Klokic*, 219 Ariz. 241, ¶ 13, 196 P.3d at 847. A court may then cure the error through a special verdict form or jury instruction. *See Klokic*, 219 Ariz. 241, ¶ 14, 196 P.3d at 847.

fundamental error review is appropriate here, because we find no prejudice in the case before us.

¶16         As we observed in *State v. Rushton*, when a defendant is "truly . . . concerned with the danger of a non-unanimous jury verdict so as to risk the possibility of multiple convictions and penalties, he ha[s] ample opportunity to raise the issue in the trial court." 172 Ariz. 454, 456, 837 P.2d 1189, 1191 (App. 1992). By failing to object to the indictment, the forms of verdict, or the trial court's jury instructions, a defendant demonstrates his or her "complicity in the charge as alleged." *Id.* And because no prejudice results from such a strategic maneuver, a defendant will "not [be] entitled to relief from this court." *Id.*; *see State v. Schroeder*, 167 Ariz. 47, 53 n.5, 804 P.2d 776, 782 n.5 (App. 1990) (noting advantages to defendant from not objecting to duplicity).

¶17         Although *Hargrave* did not undertake an express analysis of prejudice, it essentially adopted the complicity view from *Rushton*. In *Hargrave*, the court tersely concluded the defendant had "failed to demonstrate fundamental error" because he had failed to seek any remedies below; specifically, he "did not object to the . . . jury instruction and verdict forms" which, if modified, could have cured the alleged defect in the indictment. 225 Ariz. 1, ¶ 32, 234 P.3d at 579.

¶18         Here, as in *Hargrave*, Butler failed to seek any curative measures; consequently, he is not entitled to appellate relief. By failing to act below, he not only "traded the risk of a non-unanimous jury for the reward of only one potential sentence," *Anderson*, 210 Ariz. 327, ¶ 18, 111 P.3d at 378, but he also increased his chance of acquittal by combining in one count separate offenses for which he did not have equally

9

compelling defenses. Rather than suffering prejudice, Butler has "simply gambled and lost." *Rushton*, 172 Ariz. at 456, 837 P.2d at 1191. And in the absence of prejudice, we will not disturb the verdict. *See Valverde*, 220 Ariz. 582, ¶ 12, 208 P.3d at 236.

**Property Receipt**

¶19 Butler next contends the trial court committed reversible error by admitting into evidence the property receipt for a "Nike shoe box containing a large amount of U.S. currency" issued by a Georgia sheriff's deputy. We disagree.

¶20 In the trial court, Butler objected to the admission of the receipt under Rules 401, 403, and 404(b), Ariz. R. Evid. The state asserted it was offering the property receipt as "indicia" of the charged crime and claimed the evidence was "probative, not prejudicial." The state now contends the receipt "was relevant because it showed that [Butler] was acting within the scope of the charged conspiracy."

Hearsay, Confrontation Clause

¶21 On appeal, Butler asserts the property receipt was inadmissible hearsay and its admission into evidence violated his right to confront adverse witnesses. In order to preserve a challenge to the admissibility of evidence, parties must make a "specific, contemporaneous objection to its admission. The motion or objection must state specific grounds in order to preserve the issue for appeal." *State v. Moody*, 208 Ariz. 424, ¶ 39, 94 P.3d 1119, 1136 (2004) (citation omitted). Because Butler did not object on either hearsay or Confrontation Clause grounds in the trial court, we review only for fundamental error. *See Valverde*, 220 Ariz. 582, ¶ 12, 208 P.3d at 236.

¶22 Fundamental error is "'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005), *quoting State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). To prevail under fundamental error review, "a defendant must establish that (1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice." *State v. Smith*, 219 Ariz. 132, ¶ 21, 194 P.3d 399, 403 (2008). Establishing prejudice requires a showing that "absent error, a reasonable jury could have reached a different result." *State v. Martin*, 225 Ariz. 162, ¶ 14, 235 P.3d 1045, 1049 (App. 2010). The defendant has the burden of persuasion in fundamental error review. *Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607.

¶23 Butler asserts that "[a]dmission of this receipt was highly prejudicial where the remainder of the evidence as to [him] was thin, and the majority of the counts focused on [codefendant] Francis." He argues the receipt was introduced "to have the jury speculate that the money found . . . was tied to criminal activity" and that the jury "was invited to similarly speculate he was committing a drug offense in Georgia."

¶24 Assuming arguendo that the trial court erred in admitting the property receipt into evidence, Butler has not shown this "caused prejudice sufficient to constitute fundamental error." *State v. Velazquez*, 216 Ariz. 300, ¶ 50, 166 P.3d 91, 102 (2007). As noted above, there was substantial circumstantial evidence demonstrating Butler's guilt. The jury was presented with evidence that Butler was inside the houses in question, that

11

his activity was consistent with drug activity, and that he had a list of various guns and ammunition in his suitcase.

¶25    Ordinarily, "'if hearsay evidence is admitted without objection, it becomes competent evidence admissible for all purposes.'" *State v. Allen*, 157 Ariz. 165, 171, 755 P.2d 1153, 1159 (1988), *quoting State v. McGann*, 132 Ariz. 296, 299, 645 P.2d 811, 814 (1982).  Here, Butler has failed to show that a reasonable jury could have reached a different result had the property receipt been precluded or had the deputy who prepared the receipt been cross-examined.  Thus, the trial court's admission of the property receipt into evidence was not fundamental, prejudicial error.

Rule 404

¶26    Butler also argues (1) the property receipt was improper character evidence, (2) the "relevancy of the receipt . . . was minimal because a connection was never established between the money found in Georgia and the charges in Arizona," and (3) the trial court did not conduct an inquiry to determine whether the probative value of the evidence was outweighed substantially by the danger of unfair prejudice as required by Rule 403, Ariz. R. Evid.

¶27    The state contends the receipt was not improper character evidence because it was intrinsic to the charged offense and the probative value of the receipt outweighed any prejudice.  The indictment alleged Butler was involved in a conspiracy beginning on or about September 13, 2005, and continuing through 2007.  The state notes, "The [p]roperty [r]eceipt was dated September 13, 2006, and [it] provided that [Butler] was transporting a large amount of money."  The state argues the receipt was "inextricably

12

intertwined with [Butler]'s conspiracy charge," and for this reason, Rule 404(b) is inapplicable because the probative value of such intrinsic evidence is not based solely on an inference of criminal propensity.

**¶28**    Because Butler properly raised these objections in the trial court, we review for an abuse of discretion. *See State v. Lehr*, 227 Ariz. 140, ¶ 19, 254 P.3d 379, 386 (2011). Under an abuse of discretion standard of review, "we uphold a decision if there is 'any reasonable evidence in the record to sustain it.'" *State v. Morris*, 215 Ariz. 324, ¶ 77, 160 P.3d 203, 220 (2007), *quoting State v. Veatch*, 132 Ariz. 394, 396, 646 P.2d 279, 281 (1982). We find no abuse of discretion here.

**¶29**    Rule 404(b) "appl[ies] only to evidence of 'other' crimes, wrongs, or acts." *State v. Ferrero*, 229 Ariz. 239, ¶ 13, 274 P.3d 509, 512 (2012). "[E]vidence is intrinsic in Arizona if it (1) directly proves the charged act, or (2) is performed contemporaneously with and directly facilitates commission of the charged act." *Id.* ¶ 20. "[E]vidence of acts that are so interrelated with the charged act that they are part of the charged act itself" is not evidence of another crime; thus, it is not analyzed under Rule 404(b). *Ferrero*, 229 Ariz. 239, ¶ 20, 274 P.3d at 513. Otherwise, when "evidence is offered for a non-propensity purpose, it may be admissible under Rule 404(b), subject to Rule 402's general relevance test, Rule 403's balancing test, and Rule 105's requirement for limiting instructions in appropriate circumstances." *Ferrero*, 229 Ariz. 239, ¶ 12, 274 P.3d at 512.

**¶30**    Butler contends the property receipt was introduced to demonstrate conformity with the crime charged and, relying on *State v. Vigil*, 195 Ariz. 189, ¶ 24, 986

13

P.2d 222, 225 (App. 1999), maintains that, "to the extent a 'common scheme or plan' is alleged, 'the state must demonstrate that the other act is part of a particular plan of which the charged crime is a part.'" He relies on *State v. Ives*, in which the court concluded the defendant's four acts of child molestation, "separated in time by as much as seven years or more, [were] not acts of 'a particular plan of which the charged crime [was] part.'" 187 Ariz. 102, 108-09, 927 P.2d 762, 768-69 (1996), *quoting State v. Ramirez Enriquez*, 153 Ariz. 431, 432-33, 737 P.2d 407, 408-09 (App. 1987). Butler also relies on *Vigil*, in which the court ruled testimony about prior acts was provided to "suggest[] that because the defendant had twice allegedly harassed the victim, he must have also committed the [charged offense of] drive-by shooting." 195 Ariz. 189, ¶ 25, 986 P.2d at 226. The court concluded, "[T]he other act evidence seems to have been intended to prove the defendant's propensity for criminal behavior similar to the crime charged." *Id.*

¶31 Here, in contrast, the property receipt was dated September 13, 2006, less than one week before Arizona authorities found cash, drugs, and weapons in the houses Butler was visiting, and the receipt indicated Butler had been transporting a large amount of cash. The trial court noted there is a well-known association between money trafficking and drug trafficking, and it was "not surprising" that Butler was found with a large amount of money in Georgia "given what he[ was] charged with." Applying the *Ferrero* intrinsic evidence standard, it was reasonable for the trial court to conclude that the receipt directly proved the alleged conspiracy or that transporting the large amount of cash was performed contemporaneously with and directly facilitated the charged conspiracy.

14

¶32 Additionally, the receipt indicated that the money was found in a shoe box and that Butler had a Florida address. The state presented evidence that large amounts of marijuana were shipped to Florida and that a large amount of money was hidden in a small box in one of the Arizona houses. The trial court thus reasonably could have concluded the property receipt was relevant. The court did not abuse its discretion by admitting the property receipt into evidence over Butler's Rule 404(b) objection.

Rule 403

¶33 Even if evidence is relevant and admissible under Rule 404(b), "the trial court must still conduct an inquiry under Rule 403 to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice." *Vigil*, 195 Ariz. 189, ¶ 26, 986 P.2d at 226. Rule 403 provides that courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Our supreme court has held that "[u]nfair prejudice 'means an undue tendency to suggest decision on an improper basis,' such as emotion, sympathy or horror." *State v. Schurz*, 176 Ariz. 46, 52, 859 P.2d 156, 162 (1993) (citation omitted), *quoting* Fed. R. Evid. 403 advisory comm. note.

¶34 Butler argues the trial court did not conduct a Rule 403 analysis to determine whether the probative value of the evidence was outweighed substantially by the danger of unfair prejudice. We disagree. After Butler presented his argument that the receipt was more prejudicial than probative, the trial court noted the receipt bore "a date listed within the timeframe" of the alleged trafficking conspiracy. The court then opined, "I just think it doesn't get more probative than this, frankly. . . . [T]his is probative of

15

what somebody was doing six days earlier involving a large amount of money, amount unknown." In the context of the exchange, the court implicitly concluded the probative value outweighed any improper prejudicial impact. Butler argues the receipt was introduced "to have the jury speculate that the money found . . . was tied to criminal activity," and the jury "was invited to similarly speculate he was committing a drug offense in Georgia." But he concedes "the reason for the Georgia stop was not established at trial," and the jury was instructed to consider only evidence from testimony and exhibits.

¶35 Although the receipt in the instant case was created during a police encounter in another state, we are not convinced the trial court abused its discretion in finding the receipt's relevance outweighed the risk of unfair prejudice. Based on the evidence, the court reasonably concluded the receipt was more probative than prejudicial.

### *Batson* Challenge

¶36 During jury selection, Butler challenged the state's peremptory strike of two prospective African-American jurors, Juror S. and Juror W., pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). When reviewing a trial court's ruling on a *Batson* challenge, we review de novo the court's application of the law but defer to its findings of fact unless clearly erroneous. *State v. Newell*, 212 Ariz. 389, ¶ 52, 132 P.3d 833, 844-45 (2006). In *Batson*, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits the state from using peremptory strikes to remove prospective jurors "solely on account of their race." 476 U.S. at 89.

16

Law of the Case

¶37    The state contends that the law of the case doctrine precludes us from reaching Butler's *Batson* challenge on the merits. We disagree. This court addressed the *Batson* challenge of Butler's codefendant in a memorandum decision and held the trial court did not clearly err in determining that the strikes were race-neutral. *State v. Francis*, No. 2 CA-CR 2009-0020, ¶ 13 (memorandum decision filed Apr. 22, 2010).[5] The state, relying on *Dancing Sunshines Lounge v. Industrial Commission of Arizona*, 149 Ariz. 480, 482, 720 P.2d 81, 83 (1986), asserts "that the decision of a court in a case is the law of that case on the issues decided throughout all subsequent proceedings in both the trial and appellate courts, provided the facts, issues and evidence are substantially the same as those upon which the first decision rested." In *Dancing Sunshines Lounge*, the court noted that "'law of the case' is generally held to be a rule of policy and not one of law." *Id.* at 482, 720 P.2d at 83. Additionally, the court held that a memorandum decision is the law of the case "[a]s to the parties involved in the decision." *Id.* Butler was not a party in Francis's appeal; thus, we conclude the *Francis* memorandum decision is not the law of the case in Butler's appeal.

¶38    The state also cites several cases from federal courts in which the law of the case doctrine precluded subsequent challenges by a codefendant. *See, e.g.*, *United States v. Wardell*, 591 F.3d 1279, 1300 (10th Cir. 2009); *United States v. Amlani*, 111 F.3d 705, 719 (9th Cir. 1997); *United States v. Schaff*, 948 F.2d 501, 506 (9th Cir. 1991). We are

---

[5]We addressed the *Batson* issue in a separately filed decision because it did not meet the criteria for publication. *See Francis*, 224 Ariz. 369, n.1, 231 P.3d at 374 n.1.

not bound, however, to follow such federal precedent. *See State v. Swoopes*, 216 Ariz. 390, ¶ 35, 166 P.3d 945, 956 (App. 2007).

**¶39** Although Butler's arguments are similar to those raised by his codefendant, Francis, his arguments are not identical. For instance, Francis conceded the prosecutor "arguably had a legitimate reason" to strike Juror S., and did not directly challenge that strike on appeal. *Francis*, No. 2 CA-CR 2009-0020, ¶ 13. Here, Butler alleges that striking the only two remaining African-American jurors, collectively, supports the inference of discrimination. It would be inequitable to deny a criminal defendant the right to appeal solely because his codefendant was unsuccessful in his appeal, particularly when the codefendant conceded points that the second appellant does not concede. Therefore, we conclude that Butler is permitted the opportunity to pursue his own *Batson* challenge on appeal.[6]

*Batson* Merits

**¶40** A trial court's analysis of a *Batson* challenge involves three steps. *State v. Gallardo*, 225 Ariz. 560, ¶ 11, 242 P.3d 159, 164 (2010). First, the challenging party must make a prima facie showing of discrimination based on race, gender, or another protected characteristic. *State v. Lucas*, 199 Ariz. 366, ¶ 7, 18 P.3d 160, 162 (App.

---

[6]The state's failure to comply with our appellate rules provides an alternative basis for us to reach the merits of the *Batson* claim. Rule 31.24, Ariz. R. Crim. P., allows memorandum decisions to be used as the law of the case, but the rule provides that "[a]ny party citing a memorandum decision pursuant to this rule must attach a copy of it to the motion or petition in which such decision is cited." The state did not attach a copy of the *Francis* memorandum decision to its brief. For this reason, the state has waived its law of the case argument. *See Dykeman v. Ashton*, 8 Ariz. App. 327, 330, 446 P.2d 26, 29 (1968) (finding waiver based on failure to comply with formal appellate rules).

2001). Next, "the striking party must provide a race-neutral reason for the strike." *Gallardo*, 225 Ariz. 560, ¶ 11, 242 P.3d at 164. The explanation need not be persuasive or plausible so long as it is facially neutral. *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995). Third, the trial court must determine the credibility of the proponent's explanation and whether the opponent met its burden of proving discrimination. *State v. Martinez*, 196 Ariz. 451, ¶ 16, 999 P.2d 795, 800 (2000); *State v. Eagle*, 196 Ariz. 27, ¶ 9, 992 P.2d 1122, 1125 (App. 1998), *aff'd*, 196 Ariz. 188, 994 P.2d 395 (2000). "This third step is fact intensive and will turn on issues of credibility, which the trial court is in a better position to assess than is this Court." *Newell*, 212 Ariz. 389, ¶ 54, 132 P.3d at 845. Therefore, the court's finding is entitled to great deference. *Id.*

¶41 Here, the prosecutor used two peremptory challenges to remove the only two African-American jurors, S. and W. The prosecutor asserted his concern that Juror S., a residential drug counselor, might express sympathy or "look to inner motivations" in jury deliberations. The prosecutor struck a Caucasian juror for the same reason. The prosecutor explained that he had struck Juror W. because "her reactions to [the] questions, whether they were good or bad questions, . . . clearly . . . showed discontent and disapproval of the manner in which [the prosecutor] was asking questions."

¶42 Butler alleges that "the prosecutor's subjective factors cannot overcome the strong objective indicia of discrimination: that the prosecutor peremptorily struck the only two African-American panel members in this case . . . where the defendant, Mr. Butler, was also of the same race." Butler contends Juror W. was subjected to "disparate questioning" and the prosecutor "continued to single her out despite the court's repeated

19

warnings." Butler argues this disparate questioning was an attempt to "generate cause where none otherwise existed." He concedes that "striking the only two African-American jurors, standing alone, may not be sufficient to support an improper inference," but he notes a court can infer discrimination when it considers all relevant circumstances. Butler alleges he was denied due process and equal protection under the law on the ground that the strikes of the only remaining African-American jurors were "utterly pretextual, lacking even the veneer of neutrality." Despite Butler's objections, the trial court ruled, "There's no *Batson* violation. The strikes were race neutral."

¶43 We are not persuaded the trial court clearly erred in finding the state's explanations race-neutral. *See State v. Hernandez*, 170 Ariz. 301, 305, 823 P.2d 1309, 1313 (App. 1991) ("It is permissible to rely on a prospective juror's mode of answering questions as a basis for peremptory selections."). Butler cites *Lucas*, 199 Ariz. 366, ¶ 12, 18 P.3d at 163, for the contention that the state is not excused "from obvious prejudice merely because it is also able to articulate a nondiscriminatory reason for the strike." *Lucas* is distinguishable from the instant case. In that case, the prosecutor advanced two reasons for the strike—one permissible and one impermissible. *Id.* ¶¶ 9-11. Here, the only justifications the prosecutor offered were race-neutral. *Batson* challenges involve credibility determinations that the trial court is in the best position to make. *Newell*, 212 Ariz. 389, ¶ 54, 132 P.3d at 845. We have been provided no reason to question those determinations here.

**Disposition**

¶44        For the foregoing reasons, Butler's convictions and sentences are affirmed.

/s/ *Peter J. Eckerstrom*

PETER J. ECKERSTROM, Presiding Judge

CONCURRING:

/s/ *Joseph W. Howard*

JOSEPH W. HOWARD, Chief Judge

/s/ *J. William Brammer, Jr.*

J. WILLIAM BRAMMER, JR., Judge