NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

WILLIAM EARL WADE, JR., *Appellant.*

No. 1 CA-CR 20-0095
FILED 2-23-2021

Appeal from the Superior Court in Maricopa County
No. CR2018-158411-001
The Honorable Ronee Korbin Steiner, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey Ball
*Counsel for Appellee*

Gurion Legal, Phoenix
By Omer Gurion
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

¶1        William Earl Wade Jr. appeals his convictions and sentences for possession of methamphetamine and possession of drug paraphernalia. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        In December 2018, Phoenix police officers encountered Wade at a transient camp.  Wade consented to a search of his person, and an officer found a baggie containing 1.1005 grams of methamphetamine and a glass pipe in Wade's front left pants pocket.  Officers searched Wade's backpack and found empty baggies.

¶3        The State charged Wade with one count of possession of dangerous drug (methamphetamine), a class 4 felony (count 1), and one count of possession of drug paraphernalia (pipe), a class 6 felony (count 2). A jury convicted Wade as charged, and the superior court sentenced him to twelve years in prison for count 1 and to a concurrent term of 5.75 years in prison for count 2.  Wade timely appealed, and we have jurisdiction pursuant to Arizona Constitution article VI, § 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, -4033(A)(1).

## DISCUSSION

I.        Alternate Juror

¶4        Wade first argues the superior court erred by allowing an alternate juror to deliberate after not being present for supplemental closing arguments made to the originally constituted jury.  He concedes he did not object to the alternate juror deliberating without being privy to supplemental arguments made by counsel when the original jury was at an impasse, but argues the alleged error was structural or fundamental.

¶5        After closing arguments were presented, jurors 4 and 6 were randomly selected as alternate jurors.  The next day, the jury informed the

court that the jurors could not reach an agreement. The court read them the impasse instruction and allowed both sides to present additional argument. As the bailiff brought the jury back to the jury room for more deliberations, juror 1 had an emotional breakdown. The court spoke to juror 1, and she told the court she could not continue deliberating. Without objection, the court excused juror 1 and replaced her with juror 6 pursuant to Arizona Rule of Criminal Procedure 18.5(h)(3). The court instructed the jury not to deliberate again until juror 6 arrived to deliberate.

¶6 After juror 6 arrived at court, and before the court further instructed the jury, the State raised the issue of the "five-minute . . . argument we made after there was an impasse with the jury, and I don't know . . . whether or not [juror 6] needs to watch the FTR clip or be made aware of that, I know it is not evidence because it is argument, but I just wanted to raise that." The court responded that the supplemental arguments "wouldn't matter," because the court would be instructing the jurors to disregard all of their previous deliberations. Defense counsel agreed that juror 6 did not need to hear the supplemental arguments. The court then gave the jury the instruction for reconstituted juries, which directed jurors to start deliberations anew and not to "consider any part of your prior deliberations and/or discussions."

¶7 "[T]he relatively few instances in which we . . . regard error as structural all involve errors that deprive defendants of basic protections and infect the entire trial process from beginning to end, and include errors such as a biased trial judge [and the] complete denial of criminal defense counsel." *State v. Bush*, 244 Ariz. 575, 591, ¶ 66 (2018) (internal quotations omitted). And "[a] defendant establishes fundamental error by showing that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). The first step in fundamental error or structural error review is determining whether trial error exists. *See id.*

¶8 Wade argues he did not receive a fair trial because "7 of the 8 jurors deliberating were armed with additional argument than that provided to the new juror." He cites no caselaw to support his argument that permitting an alternate juror to deliberate as part of a reconstituted jury, without having heard supplemental closing arguments presented to the original jury while at an impasse, constitutes fundamental or structural error.

**¶9**        We find no error, structural, fundamental, or otherwise. First, when the State suggested juror 6 should watch a video recording of the supplement arguments, or otherwise be made aware of them, the court asked defense counsel whether that process needed to take place. Defense counsel said juror 6 did not need to see the video. Assuming arguendo that failure to show juror 6 a recording of the supplemental argument was error; Wade invited any such error when he agreed it was unnecessary to do so and he waived the argument on appeal. *State v. Logan*, 200 Ariz. 564, 565-66, ¶ 9 (2001) (appellate courts "will not find reversible error when the party complaining of it invited the error").

**¶10**        Second, we presume jurors follow the superior court's instructions. *State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006). The supplemental arguments occurred during the originally constituted jury's deliberations, and the court instructed the jurors to begin deliberations anew and not to consider its previous deliberations. We therefore will presume that the reconstituted jury only considered the parties' closing arguments and not the supplemental arguments. Juror 6 was present for all of the evidence and for the parties' closing arguments. Juror 6 did not "miss[] large portions of the trial," or miss "testimony [that] was particularly critical." *See State v. Prince*, 226 Ariz. 516, 533, ¶¶ 55-58 (2011) (no error, fundamental or otherwise, occurred when the court permitted a juror to deliberate after the juror slept through testimony that was not particularly critical) (internal quotation omitted). We cannot conclude that Wade was deprived of a fair trial because juror 6 did not hear the supplemental arguments.

II.    Testimony About the Baggies

**¶11**        Wade next argues the superior court violated Arizona Rule of Evidence ("Rule") 404(b) by permitting the State to introduce testimony about the baggies police found in his backpack. At trial, Officer Nevarez testified, without objection, that he found "a ton" of "small clear baggies" in Wade's backpack. The baggies were then admitted into evidence without objection. On appeal, Wade argues the superior court erred by "admitting character evidence against [him] for the sole purpose of making him appear to be a habitual drug user," and that he was deprived of a fair trial.

**¶12**        Normally we review a court's admission of evidence for an abuse of discretion. *State v. Vigil*, 195 Ariz. 189, 191, ¶ 13 (App. 1999). However, because Wade did not object to the testimony, we review for fundamental error. *See Escalante*, 245 Ariz. at 138, ¶ 1.

¶13            Rule 404(b)(1) precludes evidence of "other crimes, wrongs, or acts" to prove the character of a defendant "in order to show action in conformity therewith." Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b)(2). "In all these situations the bad acts shed some light on the crime charged and not merely on the defendant's criminal propensity." *State v. Rose*, 121 Ariz. 131, 136 (1978). "The list of 'other purposes' in rule 404(b) . . . is not exclusive; if evidence is relevant for any purpose other than that of showing the defendant's criminal propensities, it is admissible . . . ." *State v. Jeffers*, 135 Ariz. 404, 417 (1983).

¶14            Here, even if the testimony about the baggies constituted other acts character evidence it was nonetheless admissible under Rule 404(b) for a non-propensity purpose because the testimony served to rebut Wade's defense and testimony that he did not knowingly possess methamphetamine. *See State v. Williams*, 183 Ariz. 368, 376 (1995) ("Evidence which tests, sustains, or impeaches the credibility or character of a witness is generally admissible, even if it refers to a defendant's prior bad acts.") (internal quotation omitted).

¶15            Wade further argues the superior court erred by failing to sua sponte hold a hearing or make a determination about the relevance of the evidence versus its prejudicial effect pursuant to Rule 403. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Ariz. R. Evid. 401(A). The superior court did not perform the Rule 403 analysis it would have been required to perform had Wade objected to the testimony at trial. But the court would have been within its discretion to admit the evidence of additional baggies because the danger of unfair prejudice from admitting it did not substantially outweigh its probative value in establishing that Wade knew he was in possession of methamphetamine. No error, much less fundamental error, occurred.

## CONCLUSION

¶16      For the foregoing reasons, we affirm Wade's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA